# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

CIVIL ACTION NO.: _____

MANGO LABS, LLC, a Wyoming limited
liability company,

      Plaintiff,

v.

JOHN KRAMER, an individual,
MAXIMILIAN SCHNEIDER, an individual,
and Does 1-10, et al.,

      Defendants.

_____ /

## COMPLAINT

Plaintiff, Mango Labs, LLC ("Mango Labs" or "Plaintiff") hereby sues Defendants John Kramer ("Kramer") and Maximilian Schneider ("Schneider," and together with Kramer, "Defendants"), and states as follows:

## NATURE OF THE CASE

1.    Mango Labs, LLC brings this action against Defendants for breach of fiduciary duty, violation of Article 1802, § 5141 of the Puerto Rico Civil Code, fraud, and unjust enrichment.

2.    Mango Markets is a decentralized, non-custodial cryptocurrency exchange and a pioneer in the decentralized finance ("DeFi") ecosystem. Mango Markets launched in February 2021 and quickly became among the most utilized DeFi protocols. The organization that governs the protocol is the Mango Decentralized Autonomous Organization ("Mango DAO" or "DAO"). Mango Labs is an entity that develops software and has been funded by the Mango DAO. Mango Labs has been assigned the claims of the Mango DAO and individual members of the Mango DAO in this action.

3.      FTX was a cryptocurrency exchange that filed for bankruptcy in November 2022. Prior to its collapse, FTX allowed its users to deposit MNGO on its platform.  After FTX collapsed, the MNGO tokens deposited on FTX were under the control of the FTX bankruptcy estate.  In October 2023, the bankruptcy court ordered the FTX estate to sell off certain assets, including its MNGO tokens.

4.      Defendants are core Mango DAO personnel.  They work in trusted positions for the Mango DAO and are charged with handling highly sensitive and confidential tasks.  These positions of trust include assisting with litigation and regulatory investigations the Mango DAO has faced, dealing with a $100m+ attack on Mango Markets, and managing the Mango DAO treasury.

5.      In a brazen abuse of this trust, Defendants took FTX's MNGO sale as an opportunity to misappropriate millions of dollars in profit for themselves at the expense of their fellow Mango DAO members and the Mango DAO itself.

6.      Defendants' scheme went like this:  First, they represented to the Mango DAO and its members that they were going to buy back the MNGO tokens on behalf of the DAO and transfer the tokens close to cost.  This would be accretive to the DAO and token holders due to the market price of the MNGO token being below the value of the assets in the Mango DAO treasury at the time.  The DAO also preferred that it recover the tokens held by FTX rather than a potentially malicious actor who could attempt to abuse the voting power the tokens conferred to try to steal money from the DAO or otherwise harm its interests.  (Ironically, this is precisely what Defendants did themselves).

7.      Defendants' representations that they were going to buy the MNGO tokens from FTX to help the Mango DAO were all lies.  In secret, Defendants conspired to put in place their

own contractual arrangements to "flip" the MNGO tokens.  They then, on information and belief, purchased around 330 million MNGO tokens that had been held by the FTX estate, hiding their identity from Mango DAO when doing so.  Defendants' goal was to turn around and sell the MNGO tokens previously held by FTX at an incredible markup and pocket the profits.

8.      That is exactly what they did.  Shortly after Defendants completed their secret purchase, Kramer put to vote a proposal for Mango DAO members to sell their tokens back to the Mango DAO at an artificially inflated price (the "Proposal").  The Proposal was restricted to wallets that participated in the governance of the Mango DAO.  This is notable because just one week prior to making the Proposal, Defendants deposited all 330 million MNGO tokens purchased from the FTX estate into Mango DAO governance, thereby granting Defendants' disproportionate voting power.

9.      Mango DAO members became suspicious after seeing that 330 million MNGO tokens were deposited mere hours before the Proposal was made, and that the tokens were almost immediately used to vote in favor of the Proposal.





10.    Defendants (using the alias's @DonDuala and @Maximilian on the Mango DAO's Discord forum) did not directly respond to the question about whether they were "aware who controls this account?"  In fact, Defendants themselves controlled the account.

11.     Defendants intentionally did not publicly reveal that Defendants themselves were in fact the purchasers of the 330 million tokens.  They attempted to obscure their identity on the blockchain by using a series of cryptocurrency wallets they hoped would be difficult to trace to them.

12.     At the same time that Defendants refused to admit that they were the purchasers of the 330 million MNGO tokens they, in fact, were attempting to sell the MNGO tokens back to the DAO.  Defendants refused to admit their identities as the purchaser because they knew that keeping their identities hidden and maintaining ambiguity about the source of the MNGO tokens would maximize their attempt to pump the price at which the DAO was purchasing their ill-gotten MNGO tokens.

13.     Defendants' scheme worked:  the Mango DAO purchased 72.8 million MNGO tokens under the Proposal for a total of $2,500,000.[1]

14.     Mango Labs and members of the Mango DAO have implored Defendants to simply transfer their unlawfully acquired MNGO tokens to the Mango DAO at cost, as is their obligation. Yet every time that Mango Labs has confronted Defendants about their fraud and breach of duty, they have doubled down and attempted to pressure Mango Labs to stop.  Specifically, Defendants have attempted to block funding for Mango Labs' defense of the Mango DAO's and other victims' legal rights against a convicted attacker—Avraham Eisenberg—who exploited Mango Markets and converted over $114,000,000 in digital assets from its depositors.

15.     The Mango DAO and all Mango DAO members have been harmed based on Defendants' fraudulent conduct.  Not only did the Mango DAO lose the ability to purchase the MNGO tokens from the FTX estate directly at cost—as was the expected arrangement with

---

[1] https://x.com/dj_d_sol/status/1795471125146681706

Defendants—but the Mango DAO has suffered, among other things, (1) the loss of a significant amount of money from overpaying for the FTX estate tokens from Defendants, (2) ongoing harm to its reputation because of Defendants' misdeeds, (3) and several hundreds of thousands, if not millions, of dollars to uncover the full extent of Defendants' deceit and pursue this action.

16.    To make Mango Labs, the Mango DAO, and Mango DAO members whole, Mango Labs brings the following action and seeks all applicable forms of damages (plus all applicable pre- and post-judgment interest) as a result of Defendants' intentional fraudulent conduct, all reasonable attorneys' fees and costs, equitable relief to enjoin Defendants from further harmful conduct, and any other or additional relief deemed just and proper.

## PARTIES, JURISDICTION, AND VENUE

17.    Plaintiff Mango Labs is a Wyoming Limited Liability Company whose sole member is domiciled in North Carolina.  Mango Labs develops software related to Mango Markets.  Mango Labs has enforced claims on behalf of Mango DAO members involving other situations of fraudulent conduct.  Specifically, Mango Labs was assigned legal claims related to Avraham Eisenberg's fraudulent attack on Mango Markets (which Defendants' conduct disrupted when they initiated one of their buyback proposals during Eisenberg's criminal trial).  Mango Labs has also been at the forefront of handling other legal issues for the Mango DAO, including leading the charge of dealing with investigations from government regulators and securing highly favorable settlements to the Mango DAO and others, including Defendants (again, despite Defendants' active attempts to subvert these efforts).  Mango Labs has received grants from the Mango DAO treasury to enforce and defend Mango DAO's legal rights.  In this action, Mango Labs has been assigned Mango DAO's claims based on a vote of Mango DAO members, as well as several individual Mango DAO members' claims, including Mango Labs' owner.

18.     Defendant Kramer is a resident of Puerto Rico and manages the Mango DAO treasury.  By reason of his position as treasurer of the Mango DAO, Kramer owed Mango Labs and Mango DAO members fiduciary obligations of care, candor, compliance, fidelity, trust, loyalty, and due care, and was and is required to control and manage Mango DAO assets in a fair, just, honest, and equitable manner, and was and is required to act in furtherance of the best interests of the Mango DAO so as to benefit all Mango DAO members and not in furtherance of his personal interest or benefit.

19.     Defendant Schneider is a resident of the United Kingdom, but, on information and belief, he frequently changes his domicile.  Defendant Schneider spends significant amounts of time in the United States building Mango Markets in the United States with other Mango DAO key contributors, including Mango Labs contractors.  On information and belief, Schneider has contractual arrangements with Defendant Kramer (a Puerto Rico resident) for purposes of the conduct alleged in this Complaint.  Schneider also manages a large part of the Mango DAO's business, including acting as the administrator of communication channels, allocating funding for development, and coordinating dealings with government agencies.  By reason of his role in managing the Mango DAO, Schneider owed Mango Labs and Mango DAO members fiduciary obligations of care, candor, compliance, fidelity, trust, loyalty, and due care, and was and is required to control and manage the Mango DAO in a fair, just, honest, and equitable manner, and was and is required to act in furtherance of the best interests of the Mango DAO so as to benefit all Mango DAO Members and not in furtherance of his personal interest or benefit.

20.     Does 1-10, inclusive, are individuals or entities of unknown residence, who on information and belief aided and abetted Defendant Schneider and Defendant Kramer's fraud on the Mango DAO.  Mango Labs intends to serve the Doe Defendants upon discovering their

identities.  In the event that their identities remain undiscovered, Mango Labs intends to serve the Doe Defendants via their associated cryptocurrency wallets on the blockchain that participated in Defendant Schneider and Defendant Kramer's conduct as alleged in this Complaint.

21.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because it involves a dispute between a citizen of a State and two citizens of a foreign state and the amount at issue exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.  Thus, this lawsuit is not a collusive action brought to confer jurisdiction that the court would otherwise lack.

22.    Venue is proper in this Court under 28 U.S.C. §1391(b) because one or more of the Defendants either resides in or maintains offices in this District, and a substantial portion of the wrongs complained of herein—including the Defendants' primary participation in the wrongful acts detailed herein—occurred in this District.

## GENERAL ALLEGATIONS

**A.    Mango Markets is a groundbreaking decentralized finance protocol.**

23.    Mango Markets is a decentralized finance protocol.  It launched in August 2021 to enable people to borrow, lend, and trade cryptocurrency and cryptocurrency derivatives.  It experienced rapid growth after launch.  Within a year of its launch, users transacted over $10 billion in funds through the protocol.

24.    Mango Markets is governed by an entity known as the Mango Decentralized Autonomous Organization ("Mango DAO").  The Mango DAO entity is comprised of MNGO token holders.  Those token holders make governance decisions about the protocol by voting with their tokens.  The Mango DAO has a treasury whose purpose is to serve as an insurance fund against attack against Mango Markets.  The Mango DAO treasury also issues grants to fund software development, operations, and other expenses for the benefit of the Mango DAO.  The

Mango DAO built up a significant treasury after launch. By October 2022, the Mango DAO held over $70 million in its treasury.

25. Certain Mango DAO members, including Defendants, take on significant roles within the Mango DAO akin to officers and general partners. All MNGO holders participate in decision-making for the protocol itself as well.

**B.    Several years after Mango Markets' launch, it was the victim of a malicious actor's $114 million criminal exploit of its platform.**

26. In October 2022, a cryptocurrency trader named Avraham Eisenberg ("Eisenberg") engaged in a now-notorious, illegal exploit of Mango Markets. Specifically, Eisenberg (who had a history of attacking cryptocurrency platforms and manipulating cryptocurrency markets), through fraud and deception, converted approximately $114 million from Mango Markets depositors into his own accounts.

27. In the days following his attack, Eisenberg schemed to protect his ill-gotten gains through further unlawful means. He forced the Mango DAO to enter into an unenforceable settlement agreement—under duress—purporting to release depositors' claims against him and precluding it from pursuing a criminal investigation. Following a Mango DAO vote regarding Eisenberg's ultimatum, he returned approximately $67 million of the money he unlawfully converted.

28. In December 2022, the United States' Attorney's Office for the Southern District of New York filed a criminal complaint against Eisenberg based on his above-described misconduct. The criminal case against Eisenberg went to trial in April 2024 and a jury convicted Eisenberg of fraud, commodities market manipulation, and wire fraud in connection with the manipulation on the Mango Markets decentralized cryptocurrency exchange. Members of the Mango DAO were actively involved in the Eisenberg trial and several were in attendance at

Eisenberg's trial. Mango Labs appeared in the criminal trial and litigated a Rule 17 subpoena related to the claims that Mango Markets depositors assigned to it.

29.    Eisenberg's attack on Mango Markets spawned charges against him by the United States Securities and Exchange Commission ("SEC"), as well as the Commodity Futures Trading Commission ("CFTC"). Cases filed by those regulators against Eisenberg are pending in the Southern District of New York.

30.    Eisenberg's attack on Mango Markets also led to an SEC investigation of Mango Markets itself, including Mango DAO. Mango Labs shouldered the burden of taking lead on handling the SEC investigation for the DAO's benefit. Mango Labs negotiated a very favorable settlement on behalf of a joint defense group that included the Mango DAO, and which benefited Defendants as well.[2]

## C.    Defendants secretly purchased MNGO tokens from FTX, manipulated the MNGO market to artificially increase their tokens' price, and offloaded them to the Mango DAO in breach of their duties.

31.    Defendant Kramer is a member of the Mango DAO and has been involved in the Mango DAO for years. He plays a significant role in the Mango DAO that requires action in the utmost of integrity: Kramer manages the Mango DAO treasury. The Mango DAO has held sums in excess of $70,000,000, a significant portion of which Kramer has been responsible for managing. The Mango DAO relies on Kramer's self-represented expertise in treasury management for digital assets to maximize the value of the Mango DAO's treasury and protect it against fraud and scams.

32.    Defendant Schneider is another member of the Mango DAO who plays an active role in managing the Mango DAO's business. Schneider is one of the original founders of the

---

[2] https://discord.com/channels/791995070613159966/1275478789127802942

Mango DAO and was present at the Solana hackathon where Mango Markets was created. Schneider remains one of the top five holders of MNGO tokens to date.  He is intimately involved in all Mango DAO business, including product development, marketing, and legal proceedings (including those against Eisenberg).  Schneider is privy to confidential and insider information of the Mango DAO, specifically regarding the project and multiple government investigations and legal actions.  In addition, Schneider is, on information and belief, working with Kramer as an agent—whether a contractor or employee—and stands to benefit from the fraud alleged in this Complaint.

33.     After FTX collapsed, and the FTX estate decided to sell the significant amount of MNGO tokens formerly held by its depositors, now in its control.  Given the Eisenberg attack and downfall of FTX, members of the Mango DAO were worried that Mango Markets was susceptible to an outsider that could purchase the MNGO tokens and put an end to Mango Markets.

34.     In order to avoid the breakdown of Mango Markets, Mango DAO members believed that it might be viable for the Mango DAO to purchase the MNGO tokens held by the FTX estate at a favorable price.  It was understood amongst Mango DAO members that one of the members would help facilitate this purchase, and in exchange for their work, could receive a reasonable commission.

35.     Schneider told Mango DAO members that he intended to buy the tokens for the Mango DAO because the token price was very low, well below the value of the Mango DAO treasury, and it would be accretive to token holders to buy the tokens.  On information and belief, Schneider's true goal, however, was not to help the DAO but instead to personally profit at the DAO's expense.

36.     In or around February 2024, Schneider told Mango DAO members that the Mango DAO did not have enough money to buy the MNGO tokens from the FTX estate because the price of the tokens was too high.  He also informed Mango DAO members that the FTX estate would only sell the MNGO tokens in one bulk sale including other non-MNGO assets, and would not sell the tokens separately, necessitating a larger purchase.

37.     During this same conversation, Schneider also told Mango DAO members that it was impossible for the Mango DAO to purchase the tokens because of certain "Know Your Customer" restrictions that prevented the Mango DAO from purchasing directly from the FTX estate.

38.     During or around the same time as one of these conversations, Defendants took to the Mango DAO governance Discord channel and began sharing their fears that whoever purchased the MNGO tokens from the FTX estate could take over and shutdown the Mango protocol.  While they played on the fears of a governance attack, they knew, on information and belief, that the risk of a governance attack was actually quite low.  This is because the voting program for the Mango DAO was subject to protections provided by the Mango DAO Upgrade Council, which has the capability of shutting down the protocol and stopping malicious attacks.

39.     On or around April 1, 2024, approximately 330 million MNGO tokens were purchased from the FTX estate.  Yet unknown to anyone else at the time, Defendants were the ones to purchase these tokens.  Publicly available blockchain records regarding the sale of the tokens reveal that intermediary wallets connected to Defendants and the buyer of the MNGO tokens have sent and received large amounts of cryptocurrencies from the same address, suggesting that Defendants are themselves the purchasers of the MNGO tokens.

40.    While the market price for MNGO tokens at the time was 1.6 cents, Defendants purchased them from the FTX estate, on information and belief, for approximately 1.2 cents per token.

41.    Following this, Defendants made open market purchases of additional MNGO tokens.  These additional purchases pumped the MNGO market price from 1.6 cents to 2.3 cents. Defendants made these purchases knowing that they planned to force a DAO vote to sell the MNGO tokens they held at 3.8 cents to the DAO, as outlined below.

**D.    Defendants offered a proposal for the Mango DAO to buy back MNGO tokens from token holders at an inflated premium.**

42.    On or around April 7, 2024, Defendant Kramer—posting under the alias "DonDuala"—presented a proposal on the Mango DAO forum whereby the Mango DAO would repurchase MNGO tokens at the price of 3.8 cents (the "Proposal").

43.    The proposal read as follows:

Summary: Restart the MNGO buyback program to grow book value and reward active governance participants.

Background: MNGO trades at a significant discount to the treasury's value (~$43M, see Treasury Diversification). MNGO has lagged the rest of the crypto market and solana ecosystem, despite Mango DAO continuing to improve & ship new products (Mango V4, Boost, Mango Router, Mango Mints), support Solana infra (Mangolana/core dev, Openbook V1 & V2, Realms spl-governance) and deliver significant value back to & from the treasury (est. MNGO book value > $0.04).

Mango's products consist of perp dex + spot orderbook + borrow/lend + router with a robust fully-onchain governed treasury, yet MNGO trades at an order-of-magnitude less than the closest comparable, JUP - indicating one of these valuations is mispriced. MNGO remains heavily discounted on a relative basis to similar protocols (AEVO, DYDX, AAVE, etc.) with many Solana defi protocols about to launch at comparable valuations.

Benefits:

1.    Token holders who want to redeem at a discount to the treasury value should be given the chance to fairly do so.

2.     Treasury value increases per token from any discounted book value buys, benefiting all remaining MNGO holders.

3.      to the market that Mango DAO is capable of delivering substantial utility to its holders and may execute further buybacks.

April 2024 Buyback: 275M MNGO for 9,995,000 CHAI (~$10.7M, ~$0.038 per MNGO / ~5% discount to book value).

44.     Several members of the Mango DAO expressed skepticism about the purpose of the Proposal.  In response to the skepticism, Kramer (under the alias @DonDuala)—acting pursuant to his authority as a treasurer of the Mango DAO—misrepresented that the Proposal was in the best interest of the Mango DAO.  Critically, he omitted that the true purpose of the Proposal was to set up the offloading of the MNGO tokens Defendants secretly purchased from the FTX estate.

 **ckamm2**  04/08/2024 8:00 PM
My read is that everyone who voted on the proposal (no matter if yes or no) is airdropped some option tokens that allow them to trade in mngo for chai. (edited)

 **iwillnotsaveyou**  04/08/2024 8:05 PM
This is way too complicated (edited)
 👍 2

🤖 @ckamm2 My read is that everyone who voted on the proposal (no matter if yes or no) is airdropped some option tokens that allow them ...
 **DonDualo** OP  04/08/2024 8:07 PM
This

🤖 @iwillnotsaveyou This is way too complicated (edited)
 **DonDualo** OP  04/08/2024 8:10 PM
3 button clicks - 1. Vote (yes or no) on the proposal 2. Claim at https://beta.dual.finance/airdrop 3. Exercise (if you want) at https://beta.dual.finance/balance
 🤚 2

 **iwillnotsaveyou**  04/08/2024 8:11 PM
It feels like trying to hide and reward only people who hang out in the governance-forum, or watch all votes onchain. While disintermediating other token holders (edited)
just take $, buy MNGO
 👍 4

 **DonDualo** OP  04/08/2024 8:13 PM
Moreso it's the easiest way to identify ownership that is active. Unraveling LPs, CEX etc would be pretty onerous/impossible

 **iwillnotsaveyou**  04/08/2024 8:14 PM
why is mango trying to cut out non-active ownership?

 **DonDualo** OP  04/08/2024 8:14 PM
It's a DAO it works best when ppl actively contribute
non-active ownership still benefits per token treasury value increase & the market signal that there is a mechanism by which treasury value actually matters

 **bingobango**  04/10/2024 8:13 PM
Starting the bidding at almost double the market price (at the time at least) is suspicious too.

Also not sure I follow the logic behind buying out people that are voting in the proposals, as presumably this will have the effect of *reducing* future participation (as voters will have sold their MNGO back to the DAO)? Seems like, if anything, it should be the other way around?



April 11, 2024

@Adrian i voted yes but not selling any mango just supporting someone who will want to do it

**bingobango** 04/11/2024 4:19 AM
Why? Why should the DAO bankroll buying out people at double the otherwise fair market price?

Also, this is so easily gamed.

Step 1. Buy a ton of MNGO
Step 2. Propose the DAO buys back MNGO at double the current market price.

A terrible precedent to set. (edited)

👍 3

**bingobango** 04/11/2024 4:57 AM
Also bad timing with the network congestion issues

and the Avi trial lol



**donderper** 04/11/2024 8:50 AM
Holy shit

| Account | Vote | Vote Weight | Percentage |
|---------|------|-------------|------------|
| FLCNp... | Yay | 333,450,822.000000 | 6.67% |

🟥 2

Did FTX estate just enter the chat
They used backpack exchange? https://solscan.io/account/FLCNpEJbwYXduòzmozqRkEyssSiRRYYd58frQ8mXPSUk

**donderper** 04/11/2024 9:07 AM
this is shady af

a week before this proposal starts being talked about FTX estate starts transferring out all 333 million of its tokens into an account that gets used in this vote (edited)
https://solscan.io/account/LP6ZX3JkgNvVLtvV21aDT7dCwuNVZznxEvuf4mC1izx?
address=MangoCzJ36AjZyKwVj3VnYU4GTonjfVEnJmvvWaxLac#splTransfers
Essentially (speculatively) someone cut a deal with FTX to buy their mngo for 1c and then put up a proposal to let them sell half of their tokens for 3.8c, so it costs say $3m to buy the tokens, then they get half the allotment of the buyback, grossing $5m, $2m net profit, and still have half the MNGO left (edited)

🟥 7

unless this was the DAO itself or someone acting on its behalf? (edited)





45.    Due to the ambiguous nature of the situation, Mango Labs' owner, posting under the alias "@daffy," attempted to defend Defendants' integrity.  He posted after discussing with Schneider that given the questions, Defendants would likely agree to temporarily hold off on the Proposal and offer more explanation about what was going on.  In their discussions, Schneider represented to Mango Labs' owner that he would consider pulling the proposal if there was pushback from other DAO members.



46.     Unfortunately, Defendants did not pull or pause anything.  Defendant Schneider instead doubled down on the scheme and posted a series of misrepresentations in an attempt to trick the Mango DAO into pushing his and Kramer's proposal through.



**Maximilian** 04/11/2024 3:20 PM
The real issue is that genuine DAOs who secure their treasury on-chain are fragile to a bad actor coming in and distributing the treasury to themselves, not pro-rata to any holder. Something a certain person was actually trying to do. It's not a theoretical attack at this point, but one that was tried and failed in 2022.

I see a lot of people here, who rarely contribute to the DAO suddenly come out of the woodwork, some who would not publicly disclose that they tried to buy a bag from the FTX estate (for their own profit), some who asked for distribution of the treasury multiple times. [edited]

 1

The situation of the last 9 months was tricky. The FTX estate was shopping around for buyers and not willing to sell the portfolio in reasonable chunks. It was the perfect opportunity for a malicious actor to come in and start a real governance attack, given the limited desire of people to purchase MNGO even at a massive discount to book value. Any participants are made to sign NDAs, but can verify on-chain that another party purchased the portfolio.

The truth is the MNGO trade was on everyone's mind in this channel. Everyone had their own way to buy the token under book value. In my opinion everyone should get equal preference to liquidate against the DAO treasury. I am convinced many of you were able to buy at 0.015 or 0.02, 0.03, but some bought way above 0.10 and the DAO should incentivize this behavior, there is no single price that is equitable for everyone involved, but the book value.

The opportunity was previously signaled by writing puts far below treasury value, for all of 2023, but the signal was not strong enough to make everyone confident. The DAO should have an army of people defending the book value in the open market, not just one person. And especially not rely on its software developers to bid millions of dollars in exchange for its illiquid token.

Meanwhile, nearly every week people ask for Mango DAO to disband. If the market continues to trade at a discount to book value, that is the same signal being sent. Why shouldn't buybacks continue indefinitely? I believe that Mango DAO should continue to fund open source development, but I also want to give pessimistic people a choice, to sell now, to increase the value for the remaining token holders, which includes myself. [edited]

 1

I support this experiment which is testing how the markets discount Mango DAO - the oldest and only transparently profitable DAO on Solana. We all know that pushing a vote with executable instructions is the best way to bring the discussion to the next level. This isn't a hostile situation, this is the consensus on which Mango DAO was founded. The actual instruction just creates option tokens to be deposited in the treasury. Another vote is needed to distribute based on the voter records.

Let's come to a consensus on what we agree is the best way forward. Keep the tone productive, stop accusing each other and focus on solutions.

 7



**LegalizeOnionFutures** 04/11/2024 3:22 PM
This isn't about whether buybacks are good, it's about whether insider raids are good

47.    The same day, while conversations on Discord were ongoing, Mango DAO members spoke with Schneider on a call. On that call, Schneider falsely represented to Mango DAO members that the MNGO tokens were purchased for over 2 cents per token from the FTX estate when they were in fact purchased for less.

48.    As stated above, at the same time that Defendants effectuated their scheme to sell their 330 million MNGO tokens back to the DAO at an inflated price, the Department of Justice

was prosecuting Eisenberg in New York. Several Mango DAO members were witnesses or potential witnesses in this trial. As a result, they were unable to communicate with each other about the Proposal. Defendants knew full well of the circumstances surrounding the Eisenberg trial (and indeed, Defendant Schneider had significant confidential insider information related to the Mango DAO regarding the trial and other business that should have precluded any of the trades he did here). On information and belief, Defendants purposefully timed the Proposal to coincide with the trial, knowing that key members of the Mango DAO would be preoccupied and unable to fully engage in the Mango DAO's deliberations of the Proposal.

49.    Given that several of the Mango DAO's members were unable to fully analyze and debate the Proposal during the Eisenberg trial, one of the Mango DAO members involved in the trial asked Defendant Kramer to pause the Proposal until the trial ended. Kramer refused to do so.

50.    On April 11, 2024, right before voting for the Proposal was about to close, Defendants used the 330 million MNGO tokens that they previously purchased from the FTX estate to vote in favor of the Proposal. Thankfully, this original iteration of the Proposal did not receive enough votes to pass.

51.    On April 17, 2024, Kramer made a second iteration of the Proposal with a purchase price of 3.4 cents instead of 3.8 cents. This iteration of the Proposal passed, with over 502 million "yes" votes—a majority of which were from Defendants' improperly obtained MNGO tokens. On April 30, 2024, the Mango DAO was thereby tricked into paying for over 78 million MNGO tokens for approximately $2.5 million pursuant to the Proposal.

52.    In May 2024, the Mango DAO was nearly tricked again into paying for another 138 million MNGO tokens pursuant to the Proposal, but Defendant Kramer pulled the proposal at the

last minute after Mango Labs' owner sent a demand letter outlining the claims asserted in this Complaint.

53.    On information and belief, at least 80% of the funds from the Mango DAO buyback of MNGO tokens pursuant to the Proposal went to Defendants.

**E.    Defendants Concealed Their Purchase of MNGO From Plaintiff and the Mango DAO to Enrich Themselves with Mango DAO Assets**

54.    Defendants did not disclose publicly that they were involved in the purchase of the MNGO tokens from the FTX estate.

55.    In fact, Defendants publicly denied that they purchased these tokens and made numerous false claims and misrepresentations to conceal this fact.  In October 2023, Schneider represented on a call with a Mango DAO member that he was going to buy the FTX estate's MNGO tokens, on behalf of the DAO, because the price was low.  Later, around February or March 2024, Schneider represented to the same Mango DAO member that the Mango DAO did not have the money to buy the FTX estate's MNGO tokens because the bundle of tokens being sold was too expensive.  Schneider's misrepresentations caused the Mango DAO to believe that he was trying to acquire the FTX MNGO tokens for the Mango DAO on favorable terms.

56.    In a May 25, 2024 message to Mango DAO members, and in an effort to justify the Proposal, Schneider said that he was fearful that whoever bought the FTX estate's MNGO tokens could force a shutdown of the Mango protocol.  In reality, the risk of a governance attack was low because Mango DAO's Upgrade Council could effectively stop one (unless the attack was conducted by Schneider himself given his position of trust with the DAO).  Schneider wished to play up the risk of an attack by others, however, in order to justify the FTX MNGO token purchase. To prevent this shutdown, Schneider claimed that he merely "sought help and advice from multiple reputable VC and trading firms" after realizing that the Mango DAO could not directly purchase

the tokens, all of whom happened to bid on the FTX estate. Schneider did not disclose which trading firm bought the tokens nor did he admit Defendants' true involvement in the purchase. Schneider knew that as a trusted Mango DAO member, others would rely on his misrepresentations and support his scheme.

57.    To attempt to hide his involvement, Schneider represented to Mango DAO members that a "strategic and activist investor" purchased the tokens from the FTX estate. He omitted that this "strategic and activist investor" was actually himself and Kramer.

58.    When some Mango DAO members raised concerns, Defendants smeared them and misleadingly told the public that the opposition to—and scrutiny of—the Proposal came from "[a] group of people who have a vested interest in a competing Solana project—marginfi—and collaborated with [Eisenberg] on his rampage of fraud" against Mango Labs and who simply wanted to see Mango Markets fall.

59.    Defendants made, in all, over a dozen egregious misrepresentations and omissions in connection with their conduct at issue in this case:

  a.    Schneider represented to at least one Mango DAO member that he was going to buy the FTX MNGO tokens for the Mango DAO because the price was low, when he knew that his intention was to pump the price and profit from the sale, while using insider information in his possession, at the Mango DAO's expense.

  b.    Schneider represented to at least one Mango DAO member that the Mango DAO could not afford to buy the MNGO tokens outright because of the bundle of other tokens that FTX required purchasing with the MNGO tokens.

  c.    Schneider caused Mango DAO members to believe, based on his misrepresentations, that he would try to acquire the FTX MNGO tokens for the

Mango DAO on favorable terms, causing other Mango DAO members to refrain from taking action with respect to these tokens.

**d.**      Schneider publicly misrepresented the risk of a governance attack, given upgrade protections, in order to justify the FTX MNGO purchase's fraudulent circumstances.[3]

**e.**      Schneider misrepresented the challenges the Mango DAO would face making direct purchases due to "Know Your Customer" restrictions, in an attempt to deceive Mango DAO members as to his true intentions.

**f.**      Schneider made false representations about the amount Defendants paid for the FTX MNGO tokens in an April 2024 call with a Mango DAO Member. Schneider claimed in that call that Defendants paid more than 2 cents for each MNGO token, while Kramer later admitted that the price Defendants paid was far lower—1.2 cents.

**g.**      Schneider publicly lied about the owner of Mango Labs by misrepresenting that he "withdrew as much as possible from contributing to Mango DAO." Schneider did this to deceive the Mango DAO into agreeing to further purchases of his MNGO tokens from FTX. Schneider had insider information that Mango Labs and its owner were actively involved in legal proceedings relating to regulatory investigations and the Eisenberg attack (all of which work benefited Schneider and Kramer's interests), but other Mango DAO members did not know the full extent of Mango Labs' role in leading regulatory response and other legal matters.

---

[3] *See* Schneider's public statements that he posted here: https://docs.google.com/document/u/1/d/e/2PACX-1vTEc-YGmpsXgpNLcCzFd8DF61kR8iFuCgBQDG-9WJBYvCxtQKClbq7PzDAFkIIHuHwq6m4WX7P7v6Zq/pub?pli=1

h.    Schneider publicly lied about Mango Labs' owner being purportedly uninterested in the FTX MNGO tokens being repurchased.  This was not true, and Schneider failed to disclose in his public statements on this issue that Mango Labs' owner did in fact support the Mango DAO repurchasing the FTX MNGO tokens, so long as the price was fair and in the interest of the Mango DAO.

i.    Schneider made public statements about discussions regarding the shutdown of the Mango DAO where he mischaracterized them and omitted material context, including the challenging legal issues the Mango DAO faced (of which Schneider had insider information regarding), and other issues around lack of progress on the development roadmap and growth, as well as the options being considered by others in the DAO.

j.    Schneider misrepresented Mango Labs' owners' goals as against the interests of the Mango DAO, when Schneider knew that Mango Labs' owner was focused only on the Mango DAO's best interests.

k.    Schneider publicly lied about the opposition to the Proposal Defendants schemed to create as being driven by supporters of a competing decentralized finance protocol called marginfi, as well as people who Schneider claimed worked with Eisenberg.  Schneider did this in an attempt to obfuscate the true nature of what was going on—he was defrauding the Mango DAO along with Kramer.[4]

l.    Kramer similarly made a litany of misrepresentations and omissions.  He, significantly, failed to disclose that he had purchased the FTX MNGO tokens with Schneider when he opened the Proposal to sell the tokens back to the Mango DAO.

---

[4] https://www.dlnews.com/articles/defi/mango-markets-insiders-accused-of-dao-raid-with-mngo-buyback/

**m.**    Like Schneider, Kramer lied about the purchase being motivated by the desire to defend against governance attacks, while omitting the full context around the risk of those attacks.[5]

**n.**    Kramer also lied publicly about the opposition to his Proposal being driven by competitors of Mango Markets who are purportedly fearful of Mango Markets' rebirth.[6] He knew this was false.

**o.**    Schneider and Kramer, together, made multiple proposals that passed to sell their wrongfully purchased FTX MNGO tokens without proper disclosures. They also did this while in possession of highly confidential, material insider information related to the Mango DAO.

**p.**    Schneider and Kramer used intermediate cryptocurrency wallets to obscure their conduct. This is similar to what Eisenberg did after his fraud and market manipulation of Mango Markets, and the use of intermediate cryptocurrency wallets was evidence presented to the jury in support of Eisenberg's conviction.

**q.**    Unbelievably, Kramer and Schneider used the 300 million+ wrongfully acquired FTX MNGO tokens to vote in favor of their own self-serving and deceptive proposals. They dubiously waited to use their extra votes until the end of the voting period.

60.    This is just what Mango DAO members involved in this case know as of right now. Even today, Defendants, on information and belief, are still hiding material information from the Mango DAO related to their conduct.

---

[5] https://discord.com/channels/791995070613159966/1226728832564723836/1228005999319711786
[6] https://www.dlnews.com/articles/defi/mango-markets-insiders-accused-of-dao-raid-with-mngo-buyback/

61.    Plaintiff, along with the Mango DAO members, trusted that Defendants, by virtue of their roles in managing the Mango DAO, would act in the best interest of the Mango DAO and relied on Defendants' representations when voting in favor of the Proposal and effectuating the buyback of MNGO tokens.

**F.    When found out, Defendants doubled down on their conduct. They threatened to block funding for Mango Labs' defense of Mango DAO's legal rights, including against Eisenberg and Defendant Schneider attempted to cause the Mango DAO to violate a settlement with the SEC.**

62.    Even after members of the Mango DAO uncovered the fact that Defendants were behind the purchase of the MNGO tokens and subsequent buyback Proposal, Defendants refused to make things right with the Mango DAO.  Specifically, on or around May 2024, Mango DAO members implored Defendants to transfer the MNGO tokens they wrongfully purchased from the FTX estate back to the Mango DAO.  Defendants refused.

63.    Worse, they retaliated against Mango Labs by threatening to sue its owner, claiming outlandishly that Mango Labs had mismanaged the legal representations of the DAO in relation to the Eisenberg attack and subsequent SEC investigations.  In truth, Mango Labs and its owner managed the legal matters involving the Mango DAO at enormous cost and for the benefit of Defendants and all other Mango DAO members.[7]

64.    Defendants also attempted to coerce Mango Labs' owner into giving up all of his MNGO tokens, which would result in Defendants having unfettered power over the Mango DAO.

65.    Other Mango DAO members are now fearful of what Defendants might do to them if they oppose Defendants' fraud.  This is valuable for Defendants, because the Mango DAO

---

[7] Mango Labs has responded to Defendants' false and cynical accusations here:
https://docs.google.com/document/u/1/d/e/2PACX-1vRa6EiCfViApMZY9ibvqbigxCMiX2sjxtaJ4DgIrW549AYrs8CFT819pYAQWAKi95QLsvqpE27mE54w/pub?pli=1.

governance voting mechanism requires public votes. So, by creating an atmosphere of fear, Defendants directly increase the odds that they will get away with their fraudulent scheme.

66.    Defendants' destruction of Mango DAO cohesion through their breach of duty and abuse of trust has also undermined Mango DAO's ability to enforce and defend its legal rights in other contexts. For instance, Defendants' threats to block funding for Mango Labs has undermined its ability to enforce victim claims against Eisenberg and required staying the civil case against Eisenberg, despite an opportunity to push it forward after Eisenberg's conviction.

67.    Defendant Schneider also in September 2024 proposed voting himself 60,000,000 MNGO tokens, even though Mango DAO had days earlier settled with the SEC and agreed not to make MNGO tokens available for trade.[8] Although Defendant Schneider was not entitled to these tokens, on information and belief, he believed voting himself 60 million MNGO would further consolidate his ability to use fraudulently acquired MNGO to disrupt DAO governance votes.

**G.    Defendants' conduct harmed the Mango DAO.**

68.    In all, Defendants abused the trust of the Mango DAO and its members through their harmful and illicit buyback scheme. On information and belief, Defendants did and continue to abuse their positions of trust to extract as much value from the Mango DAO for themselves as possible and to exploit the fact that the Mango DAO has been irreparably harmed following the Eisenberg attack.

69.    As a result of Defendants' misconduct, the Mango DAO and all Mango DAO members have been severely harmed by the Mango DAO's overpayment for the FTX estate tokens. Defendants have been unjustly enriched at the expense of the Mango DAO and its members, and any and all profit Defendants received from the Mango DAO's overpayment for the MNGO tokens

---

[8] https://discord.com/channels/791995070613159966/1196438537495642253/1289072484213329982

received from the FTX estate directly harmed the Mango DAO and its members. The damage from Defendants' conduct, on information and belief, exceeds $10,000,000.

**H.    Mango DAO and many of its individual members assigned their claims against Defendants to Mango Labs.**

70.    Before initiating this action, Mango Labs presented a governance proposal to the Mango DAO to assign the Mango DAO's and individual members' claims against Defendants to Mango Labs.[9]

71.    Following a public discussion of Defendants' conduct, including on Mango DAO's Discord channel as well as X[10], the valid votes of Mango DAO members who participated in the assignment vote were sufficient to bind the assignment proposal to the Mango DAO.

72.    Defendants, on information and belief, used their own fraudulently acquired MNGO tokens to vote against the proposal. As a result, their votes are not valid and do not effectively change the outcome of the Mango DAO assignment vote, which successfully assigned the claims of Mango DAO with respect to Defendants' conduct at issue in this case to Mango Labs.

73.    Apart from the claims of Mango DAO, the assignment vote also resulted in multiple Mango DAO individual members' claims—all those that voted in favor—being assigned to Mango Labs.

74.    In the alternative, to the extent that the assignment proposal did not assign Mango DAO's claims to Mango Labs, Mango Labs stands in the shoes of Mango DAO by way of derivative claims Mango Labs makes on behalf of the DAO and fairly and adequately represent the interests of the Mango DAO members victimized by Defendants' fraud. Mango Labs has been

---

[9] https://x.com/dadadadaffy/status/1839329895312425156;
https://dao.mango.markets/dao/MNGO/proposal/Chmsfrpt9oKWoug5ebyaik89y19xynbmPeWFamEEBCUV.
[10] *See, e.g.*, https://twitter.com/austerity_sucks/status/1840873489718272339 (observing that Defendants' conduct constitutes "truly outrageous corruption and fraud" and that "[n]ow it's time to stop them before they loot everything"); https://discord.com/channels/791995070613159966/1288889729982398588/1288889729982398588.

assigned claims of multiple members of the Mango DAO who were members at the time of Defendants' unlawful conduct and transactions. The Court has jurisdiction based on Defendants' extensive contacts with the United States, building the DAO in the United States, and working on DAO business in the United States, among others. Because Mango DAO has been captured by Defendants' and their fraud, and because it is incapable and unable to assert its own claims against Defendants, in this alternative pleading, Mango Labs is entitled to bring the Mango DAO's claims against Defendants as a derivative claim.

75.     Under any scenario, Mango Labs properly can and does proceed with asserting Mango DAO's claims against Defendants.

## COUNT I

### Breach of Fiduciary Duty (Against All Defendants)

76.     Plaintiff realleges and incorporates by reference all the preceding paragraphs as though fully set forth herein.

77.     Defendant Kramer has a special relationship with the Mango DAO, given Kramer's significant holdings and roles in the Mango DAO's management, including, without limitation, his roles as senior Mango DAO contributor and Mango DAO treasurer, making him an agent of the Mango DAO.

78.     Defendant Schneider has a special relationship with the Mango DAO, given Schneider's significant holdings and roles in the Mango DAO, including, without limitation, his roles as the administrator of the Mango DAO's communication channels, allocator of funding for the Mango DAO's development, and important participant in the Mango DAO's dealings with government agencies, making him an agent of the Mango DAO.

79.     Defendants owed the Mango DAO the highest fiduciary duties of loyalty, good faith, and due care in managing and administering the Mango DAO's affairs.

80.     Defendants were prohibited from taking actions against the interests of the Mango DAO and were required to disclose all facts that may be relevant to the Mango DAO when making decisions.  By virtue of their duties of loyalty, good faith, and due care:

(a)     Defendant Schneider was required to repurchase the MNGO tokens from the FTX estate on behalf of the Mango DAO in the first instance.

(b)     Defendants were to refrain from self-dealing by creating their own investment arrangement to purchase the MNGO tokens from the FTX estate, and thereby usurping the opportunity of the Mango DAO to purchase the tokens itself. Defendants did so based on inside information about the Mango DAO that they enjoyed by virtue of their agency with, and fiduciary roles within, the Mango DAO.

(c)     Defendants were required to disclose to Mango DAO members that they were involved in the purchase of the MNGO tokens from the FTX estate.  Instead, Defendants used concealment and trickery, working in concert to purchase MNGO tokens and inflate the price of the tokens before reselling the MNGO tokens back to the Mango DAO at a substantial profit.

(d)     Defendants were otherwise required to act in the best interests of the Mango DAO, including by not using their ill-gotten MNGO tokens to disproportionately grant themselves voting power and vote in favor of the Proposal for the Mango DAO to buy back the tokens.

81.     Defendants breached their fiduciary duties owed to the Mango DAO or aided and abetted in the breach of each other's fiduciary duties by willfully, recklessly, and intentionally failing to perform their fiduciary duties.  Defendants caused the Mango DAO to lose the business opportunity to repurchase the MNGO tokens directly from the FTX estate at cost.  Defendants also

caused the Mango DAO harm in the amount of money it was deceived into paying for the MNGO tokens under the terms of Defendants' self-dealing buyback Proposal.  Defendants wrongfully used the MNGO tokens from the FTX estate to cause a majority vote in favor of the Proposal, all the while actively concealing from the Mango DAO that Defendants were the purchasers, a fact that would have materially altered the Mango DAO member's support of the Proposal. Defendants' fraudulent scheme also caused harm to the Mango DAO's reputation, both internal amongst its members as well as in the eyes of the public marketplace.

82.    As a direct result of Defendants' breach of fiduciary duty and hijacking of the FTX MNGO tokens that could have been purchased by the Mango DAO directly at cost but for Defendants' unlawful conduct, the Mango DAO has been harmed through the inflated amount the Mango DAO was fooled into paying for the FTX MNGO tokens, the destruction of the Mango DAO's reputation, credibility, and ability to do business, the inability to purchase the MNGO tokens from FTX directly at cost, as well as the cost of remediation of Defendants' breach of fiduciary duties, and other amounts to be proven at trial.

## <u>COUNT II</u>

### Violation of Article 1802, Section 5141 of the Puerto Rico Civil Code
### (Against All Defendants)

83.    Plaintiff realleges and incorporates by reference all the preceding paragraphs as though fully set forth herein.

84.    Defendants owed the Mango DAO the highest fiduciary duties of loyalty, good faith, and due care in managing and administering the Mango DAO's affairs.

85.    Defendants caused damages to the Mango DAO through fault or negligence including, without limitation, when Defendants, through their intentional fraudulent conduct and in breach of their fiduciary duties:  (1) failed to repurchase the MNGO tokens from the FTX estate

at cost on behalf of the Mango DAO; (2) purchased the MNGO tokens from the FTX estate themselves, thus usurping the opportunity for the Mango DAO to do so itself; (4) purchased additional MNGO tokens to inflate the price of the token before reselling the MNGO tokens from the FTX estate back to the Mango DAO; and (3) concealed from the Mango DAO their identity as the purchasers of the FTX estate's MNGO tokens and their efforts to manipulate MNGO price to convince the Mango DAO that repurchasing the tokens at an inflated price was in the Mango DAO's best interest.

86.     As a direct result of Defendants' acts or omissions constituting fault or negligence, the Mango DAO has been harmed in an amount to be proven at trial.

## COUNT III

### Fraud/Misrepresentation (Against All Defendants)

87.     Plaintiff realleges and incorporates by reference all the preceding paragraphs as though fully set forth herein.

88.     Defendant Schneider made false representations with the intent to defraud the Mango DAO when he agreed to repurchase the MNGO tokens from the FTX estate on behalf of the Mango DAO at a low cost, and when he subsequently represented to members of the Mango DAO that the Mango DAO was unable to purchase the MNGO tokens, all so he and Defendant Kramer could purchase the MNGO tokens from the FTX estate themselves.  The Mango DAO reasonably and foreseeably relied on Defendant Schneider's false representations including, without limitation, by allowing Schneider to facilitate the repurchase of the MNGO tokens from the FTX estate on the Mango DAO's behalf and by refraining from purchasing the MNGO tokens directly, based on Defendant's misrepresentations that the Mango DAO was not able to do so through alternative means.

89.     Defendants made further false representations and intended to defraud the Mango DAO when they initiated the Proposal for the Mango DAO to buy back MNGO tokens.  Indeed, Plaintiff is aware of at least a dozen false representations by Defendants.  For example, Defendants initiated and advocated for the Proposal without informing, and intentionally concealing from, the Mango DAO that Defendants purchased the MNGO tokens from the FTX estate at a price of 1.2 cents.  Defendants further fraudulently concealed their purchase of additional MNGO tokens prior to initiating the Proposal in an effort to inflate the price of the MNGO tokens.  The Mango DAO reasonably and foreseeably relied on Defendants' false representations at several critical junctures, including without limitation when the Mango DAO:  (1) believed, based on Defendants' representations, that Schneider would facilitate the Mango DAO's purchase of the MNGO tokens from the FTX estate; (2) believed, based on Defendants' representations, that the Mango DAO could not purchase the FTX estate's MNGO tokens, and therefore refrained from doing so; and (3) voted on and effectuated the Proposal to repurchase the MNGO tokens at an inflated price that was the direct (and indeed, intended) result of Defendants' scheme.

90.     As a direct result of Defendants' intentional, false representations and hijacking of the FTX MNGO tokens that could have been purchased by the Mango DAO at cost but for Defendants' unlawful conduct, the Mango DAO has been harmed through the inflated amount the Mango DAO was fooled into paying for the FTX MNGO tokens, the destruction of the Mango DAO's reputation, credibility, and ability to do business, the inability to purchase the MNGO tokens from FTX directly at cost, as well as the cost of remediation of Defendants' breach of fiduciary duties, and other amounts to be proven at trial.

## COUNT IV

### Unjust Enrichment (Against All Defendants)

91.    Plaintiff realleges and incorporates by reference all the preceding paragraphs as though fully set forth herein.

92.    Defendants have unlawfully, willfully, fraudulently, illegally, and without the consent and/or authorization of the Mango DAO, been enriched in the form of the Mango DAO voting power and financial profit they received from the Mango DAO through sale of the MNGO tokens from the FTX estate pursuant to the Proposal.

93.    Defendants' enrichment as alleged herein occurred at the expense of the Mango DAO, which lost the opportunity to buy back the MNGO tokens from the FTX estate itself and which then purchased the MNGO tokens from Defendants, at an artificially inflated price, as a result of Defendants' illicit Proposal.

94.    Defendants have therefore been unjustly enriched at the Mango DAO's expense, and the Mango DAO is entitled to restitution in an amount to be established at trial.

95.    Defendants' accumulation of MNGO tokens from FTX, which they had an obligation to procure for the Mango DAO itself, is unjust, unfair, and violates principles of equity. The Court should consequently require Defendants to transfer possession of the MNGO tokens they unjustly procured to the Mango DAO.  Defendants should also disgorge any profits they made from their unjust conduct.

### PRAYER FOR RELIEF

With respect to this Complaint, and based on the foregoing, Plaintiff prays for the following relief:

A.    A declaration finding that this action is a proper derivative action and that Plaintiff is an adequate representative on the Mango DAO's behalf;

B.      Damages in an amount according to proof at trial;

C.      Restitution and disgorgement of all money, profits, compensation, or property that Defendants acquired or will acquire by any wrongful or unlawful means alleged herein and the imposition of a constructive trust on all such money, profits, compensation, and/or property;

D.      Exemplary and punitive damages, in an amount to be determined at trial, as appropriate to punish Defendants and deter such conduct;

E.      Equitable or injunctive relief as permitted by law, including requiring that Defendants transfer the MNGO tokens they unlawfully procured to the Mango DAO, as well as enjoining Defendants from using their unlawfully acquired MNGO tokens to vote in Mango DAO governance votes pending the token transfer to the Mango DAO;

F.      Pre- and post-judgment interest, at the maximum legal rate;

G.      An award to Plaintiff of the costs and disbursements of this derivative action, including reasonable attorneys' fees, costs and expenses; and

H.      Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby asserts his right to a trial by jury on all counts so triable.

RESPECTFULLY SUBMITTED.

Dated:  October 7, 2024

Respectfully submitted,

By: /s/ Carlos Jose Andreu Collazo

MICHAEL BURSHTEYN
(*pro hac vice forthcoming*)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, California 94105
Tel:  (415) 655-1300
Fax:  (415) 707-2010
Email:  Michael.Burshteyn@gtlaw.com

CARLOS JOSE ANDREU COLLAZO
**GREENBERG TRAURIG, P.A**.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Tel:  (305) 579-0500
Fax:  (305) 951-0717
USDC-PR No. 307214
Email:  carlos.andreucollazo@gtlaw.com