## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

MANGO LABS, LLC, a Wyoming limited liability company,

      Plaintiff,

          v.

JOHN KRAMER, an individual, MAXIMILIAN SCHNEIDER, an individual and Does 1-10, et al.,

      Defendants.

CIVIL NO: 3:24-cv-01469-GMM

## <u>OMNIBUS MOTION TO DISMISS</u>

TO THE HONORABLE COURT:

      COMES NOW Defendant John Kramer ("Defendant"), through his undersigned counsel, and respectfully states and prays as follows:

## I.  INTRODUCTION

      On October 7, 2024, Plaintiff Mango Labs, LLC, a Wyoming limited liability company ("Mango Labs"), commenced this action in the United States District Court for the District of Puerto Rico (the "Mango Labs Action"). Mango Labs asserts in its Complaint that this Court has diversity jurisdiction over the subject matter of the Complaint pursuant to 28 U.S.C. §1332(a)(2).

      Defendant now moves to dismiss the Mango Labs action insofar as this Court does not have jurisdiction over the subject matter to adjudicate Mango Labs' claims. In addition, Defendant also moves to dismiss the Mango Labs Action insofar as Mango Labs does not have standing to assert the claims raised against Defendant. Defendant also moves pursuant to Rule 12(b)(6) to dismiss the Complaint insofar as the Complaint fails to assert a claim upon which relief can be granted.

7975379

## II.  STATEMENT OF FACTS

According to the Complaint filed in the Mango Labs Action, Mango Markets is a "decentralized, non-custodial cryptocurrency exchange," and the organization that governs the protocol is the Mango Decentralized Autonomous Organization ("Mango DAO").  (Complaint, ¶ 2).  Mango Labs asserts in its Complaint that "Mango Labs has been assigned the claims of the Mango DAO and individual members of the Mango DAO in this action." (Complaint, ¶ 2).  Mango Labs further asserts: "In this action, Mango Labs has been assigned Mango DAO's claims based on a vote of Mango DAO members, as well as several individual Mango members' claims, including Mango Labs' owner."  (Complaint, ¶ 17).[1]  As a consequence of its settlement with the Securities and Exchange Commission, Plaintiff Mango Labs was required to burn (destroy) all of its MNGO tokens within 10 days of October 1, 2024.  Plaintiff has sworn under oath that it has destroyed all of its MNGO tokens and is in full compliance with the SEC settlement. (See docket 30-1 in civil action 3:24-cv-01587-GMM, Declaration of Dafydd Durairaj in Support of Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction, ¶¶ 28-30).  Accordingly, Plaintiff is not a Member of the DAO, has not been a member of the Mango DAO since shortly after this action was filed, and cannot be a member of the Mango DAO ever again.

According to Mango Labs, before initiating the Mango Labs Action "Mango Labs presented a governance proposal to the Mango DAO to assign the Mango DAO's and individual members' claims against Defendants to Mango Labs." (Complaint, ¶ 70).  Mango Labs references a link to the governance proposal allegedly showing this assignment, (Complaint, FN 9). The

---

[1] Other than making these two conclusory statements, the Complaint fails to factually establishing that Mango Labs has been assigned the claims of the Mango DAO and the claims of literally thousands of individual members of the Mango DAO.

governance proposal link referenced in the Complaint clearly shows that the assignment did not obtain a majority of the votes, an inconvenient undisputable fact for Mango Labs.  In an attempt to get around the fact that the voting members of the Mango DAO refused to approve the governance proposal Mango Labs sought to obtain, Mango Labs unilaterally decided to ignore the vote of the Mango DAO members and pretend that the governance proposal assigning claims to Mango Labs was approved notwithstanding that the Mango DAO members voted down that governance proposal.

In addition to having failed to obtain governance proposal approval to initiate the Mango Labs Action from the exchange members, Mango Labs, the proposal itself did not comply with the agreed upon rules of governance requiring all proposals to be executable code, not suggestions to be implemented by others.  Accordingly, not only did the governance proposal fail to pass when voted upon by the exchange members, but the governance proposal was also  invalid from the outset as it was not executable code.

## III. LEGAL ARGUMENT

### A.  RULE 12(b)(1) MOTION TO DISMISS – LACK OF STANDING

#### 1.  Standard for a Rule 12(b)(1) Motion to Dismiss.

"When reviewing a motion to dismiss under Fed. R. Civ. P. 12 (b)(1) ("Rule 12(b)(1)"), it is important to establish that federal courts are courts of limited jurisdiction that may only adjudicate cases under the umbrage of the Constitution of the United States, or cases expressly authorized by Congressional statute." *Cruz Strazarra v. Audio Visual Concepts,* No. CV 08-2069 (ADC), 2009 WL 10720188, at *2 (D.P.R. Sept. 10, 2009). Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v.*

*United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1st Cir. 1993)) (internal quotation marks omitted); *see also Mercado Arocho v. United States,* 455 F.Supp.2d 15, 17 (D.P.R. 2006) ("Plaintiff shall meet the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence.") (internal citations and quotations omitted). When confronted with such a motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa v. United States,* 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing *Murphy*, 45 F.3d at 522). The Court, however, may widen its gaze and look beyond the pleadings to determine jurisdiction. *See Martínez-Rivera v. Puerto Rico,* 812 F.3d 69, 74 (1st Cir. 2016) (collecting cases that sustain the proposition that the Court can "rely on facts outside of the pleadings" to decide a Rule 12(b)(1) motion). In evaluating a motion to dismiss for lack of subject-matter jurisdiction, the court may look beyond the complaint and the motion to dismiss and consider extrinsic materials. *See Dynamic Image Technologies, Inc. v. U.S.,* 221 F.3d 34, 37 (1st Cir. 2000).

### a.  Lack of Standing

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and Article III, Section 2, Clause 1 of the U.S. Constitution, Defendant moves to dismiss Plaintiff's Complaint for lack of standing. Federal courts have authority under the Constitution only if necessary to do so in the course of deciding an actual "case" or "controversy."  Central to the case or controversy requirement of Article III is that any person seeking to bring a case in federal court must have "standing" to do so.  If a Plaintiff does not have standing, the court lacks any authority to decide a case on the merits.  *See Hollingsworth* v. Perry, 570 U.S. 693, 700–01, 133 S. Ct. 2652, 2659, 186 L. Ed. 2d

768 (2013). In order to assert standing, the litigant must seek a remedy for a personal and tangible harm. *Hollingsworth*, at 693.

"In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Id.* at 717-08 (*quoting, Powers v. Ohio,* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). In order for such a litigant to seek relief for another party he must be officially authorized to do so, and the advocate's relationship with the third party must exhibit some of the "most basic features of an agency relationship," such as the right to control the agent's action. *Id.* at 713, *see also,* e.g., *Thole v. U.S. Bank N.A.,* No. 17-1712, slip op. at 4 (U.S. June 1, 2020) (rejecting the argument that uninjured participants in a defined-benefit plan could sue as the plan's representatives because, unlike "guardians, receivers, and executors," the plaintiffs had not been "legally or contractually appointed to represent the plan").

### i. Plaintiff has not alleged facts to show it suffered a personal and tangible harm

It is respectfully submitted that the facts alleged in the Complaint only show that Defendant made money purchasing MNGO tokens from a willing seller that Mango DAO did not itself purchase and make money on, and sold some of them back to Mango DAO pursuant to a valid governance proposal, thus causing harm to Mango DAO, and took part in This is not a personal and tangible harm to Mango Labs, as there is not <u>factually</u> alleged in the Complaint any basis upon which Defendant unlawfully deprived Mango Labs of any gain to which it otherwise was entitled to receive. All that the Complaint asserts without supporting facts or legal authority is that Defendant should have purchased the MNGO tokens for the benefit of Mango DAO but did not do so, or, also without supporting facts or legal authority, that Defendants should have disclosed

their ownership of the MNGO tokens in conjunction with the April 7, 2024 buyback proposal. The only facts alleged relate to the Mango DAO, not to Plaintiff.

ii. **Plaintiff has not alleged facts that would allow it to assert the claims of Mango DAO or its members.**

Plaintiff states that Plaintiff has been "assigned Mango DAO's claims based on a vote of Mango DAO members, as well as several individual Mango DAO members' claims, including Mango Labs' owner." (Complaint, ¶ 17). Plaintiff references a link to the governance proposal allegedly showing this assignment. (Complaint, FN 9). While the governance proposal clearly shows that the assignment did *not* obtain a majority of the votes, Plaintiff seeks to explain that away with the allegation that Defendants used their "fraudulently acquired MNGO tokens" to vote against the assignment, and the conclusory statement that the votes of these tokens "are not valid." (Complaint, ¶ 72). Plaintiff makes no attempt to provide a factual basis for this self-serving conclusion.

Put simply, there is no basis upon which Plaintiff can validly determine on its own that Defendant is the holder of "fraudulently acquired MNGO tokens" and that therefore the votes of Defendant' tokens are not valid. While it would not negate the invalidity of the action, there is not even present here any assertion by Mango Labs that the Mango DAO members voted to declare the votes of Defendants' tokens invalid, or that there was ever a vote providing any basis for disallowing the votes of any MNGO tokens on any grounds whatsoever. As such, Mango Labs cannot refer the Court to a governance proposal approved by the Mango DAO members that stripped Defendant of his token voting rights. All that Mango Labs can do is assert without any factual or legal basis to do so that Defendants' token votes are "invalid"

**2. Plaintiff's governance proposal was not valid under the Mango DAOs agreed governance procedures.**

The Mango DAO litepaper clearly states that states "[p]roposals are executable code, not suggestions for a team or foundation to implement." Plaintiff's governance proposal clearly contravenes this rule of governance. It had no executable code, and was designed specifically for Mango Labs to implement. Accordingly, the proposal was not validly made, and even if it had passed, would have no force or effect.

**3. Plaintiff's governance proposal did not pass.**

The governance proposal that might have allegedly assigned the claims of Mango DAO to Plaintiff did not obtain enough votes to pass. (See **Exhibit A**, Kramer Cert., ¶ 11; **Exhibit B**, proposal and voting results.) There is no precedent in DAO governance for determining that certain tokens cannot be validly used for voting on DAO governance proposals. (**Ex. A**, Kramer Cert. ¶ 13). The litepaper makes no mention of such an option.  Neither is there any such rule or procedure referenced in the github, the DAO FAQ, or the Mango Markets Terms and Conditions.[2] (See e.g., **Exhibit C**, Mango Litepaper).

**4. Plaintiff has not alleged facts to demonstrate that the individual members' claims have been assigned to it.**

Plaintiff states that in the alternative, Mango Labs was assigned the claims of the individual members of Mango DAO that voted in favor of Mango Labs' governance proposal.  However, the Complaint alleges no facts to support that assertion, and there is no basis to conclude such an assignment had been made from the text of the governance proposal itself. (See **Exhibit B**). By way of example, for comparison, the governance proposal made by Plaintiff does not say: "in the

---

[2] Neither has Plaintiff alleged facts that would support other forms of representational standing, such as associational standing.

case this proposal does not pass, by voting in favor you [the voting member] assign your claims to Mango Labs." Again, there is no factual or legal basis to support Mango Labs' spurious claim that exchange members assigned any claims to Mango Labs.

It is difficult to see how Mango Labs is being anything other than duplicitous when it falsely alleges in the Complaint that it has been assigned the claims of the Mango DAO and individual members of the Mango DAO. As shown herein, there simply are no facts supporting this bogus contention and in the absence of any valid assignment of claims, Mango Labs has no authority and therefore no legal standing to initiate the within Mango Labs Action.

**5. Plaintiff has not alleged facts that would find standing in a derivative claim.**

Shareholder derivative actions in federal court are governed by Federal Rule of Civil Procedure 23.1. In the recent Supreme Court case of *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), the Court clarified that Federal Rule of Civil Procedure 23.1 does not "*create* a demand requirement of any particular dimension." *Id.* 111 S. Ct. at 1716 (emphasis in original). It only speaks "to the adequacy of the shareholder representative's pleadings." *Id.* The substantive requirements of demand are a matter of state law. *Id.* at 1723; *Gonzalez Turul v. Rogatol Distributors, Inc.,* 951 F.2d 1, 2 (1st Cir. 1991).

When shareholders undertake such an action it implies that the corporation is unwilling or unable to conduct a suit on its own behalf. Clearly, it should first be ascertained whether the corporation is unwilling to undertake the action. ("[T]o be allowed, sua sponte, to place himself in charge without first affording the directors the opportunity to occupy their normal status, a stockholder must show that his case is exceptional."). *Gonzalez Turul v. Rogatol Distributors, Inc.,* 951 F.2d 1, 2 (1st Cir. 1991). Here, if Plaintiff wants to assert a derivative claim to standing on behalf of Mango DAO, it must allege facts that would tend to prove (1) Mango DAO is an

organization of a type that would give rise to a derivative action; (2) that Plaintiff has the kind of relationship to the Mango DAO that would give it the right to assert such a derivative claim; and (3) that Plaintiff has met the demand requirements under F.R.C.P. 23.1 and applicable state law. A review of the Complaint unequivocally establishes that Plaintiff has not alleged facts that would tend to prove *any* of these factors, let alone all of them. Plaintiff has not alleged that the Mango DAO is any type of organization at all,[3] let alone a type of organization that would give rise to a derivative claim. Plaintiff is not, and cannot, be a member of Mango DAO. Moreover, Plaintiff has not alleged that it has made any demand of Mango DAO to act, or that the Mango DAO refused to act pursuant to such demand. Finally, as noted above, Plaintiff is not even a member of the Mango DAO, and knew it would soon lose the status of member just days after filing this action. Accordingly, Plaintiff cannot establish legal standing in a derivative claim.

## B.  LACK OF SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1359

Under 28 U.S.C. § 1359 "[a]A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.  It is the duty of the court to inquire fully into all the circumstances and conditions which surround the making of the assignment or transfer in order that it might determine whether jurisdictional grounds do in fact exist. *Steinberg v. Toro*, 95 F. Supp. 791, 795 (D.P.R. 1951) (citing *Hartog v. Memory,* 116 U.S. 588, 6 S.Ct. 521, 29 L.Ed. 725; *McNutt v. General Motors Acceptance Corporation,* 298 U.S. 178, 56 S.Ct. ,8 , 80 L.Ed. 1135; *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951; *Benedict v. Seiberling, D.C.,*

---

[3] Plaintiff at paragraph 74 of the Complaint alleges that "[the] Mango DAO [. . .] is incapable and unable to assert its own claims against Defendants, in this alternative pleading, Mango Labs is entitled to bring the Mango DAO's claims against Defendants as a derivative claim, but it does not explain why.

17 F.2d 841; *Pure Oil Co. v. Puritan Oil Co.,* 2 Cir., 127 F.2d 6.). When a question is raised as to whether the assignment of claims is proper, the court must require the party asserting a right to an exercise of its jurisdiction to support the claim thereto by competent evidence. *Id.*

      i.      **Assignment of DAOs claims have been improperly or collusively made to invoke the jurisdiction of the Court.**

As noted above, Plaintiff has not alleged any facts that would support the conclusion that the Mango DAO has any legal personality, or if it does have legal personality, what variety of personality that might be. Without that factual and legal predicate, there is no way to determine what standing the Mango DAO might have, who might be able to assert standing on the Mango DAOs behalf, and under what conditions. In the alternative, if Plaintiff is attempting to assert standing on behalf individual Mango DAO members, as also noted above, Plaintiff has alleged no facts to support the assertion of standing on behalf of individual members of the Mango DAO.  In fact, the only evidence submitted to the Court by reference in the Complaint (see Complaint, FN 9) establishes that Plaintiff's proposed governance proposal assigning to itself individual member claims against Defendant was voted down by the Mango DAO members. Plaintiff is not even a member of the Mango DAO, and knew that it would not be a member of Mango DAO when this action was filed. Finally, as discussed below, Plaintiff has not and will not be able to meet its affirmative burden to show complete diversity because, as explained in more detail below, Plaintiff does not know who or where all the Mango DAO members are located. Accordingly, Plaintiff would have been aware that Mango DAO would never be able to prove the necessary diversity to invoke the jurisdiction of this court. As such, any assignment of Mango DAO's and members' claims could only have been made improperly in order to invoke the jurisdiction of the Court.

### C. RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF DIVERSITY JURISDICTION

#### 1. Standard

Plaintiff has alleged that jurisdiction is proper in this Court under 23 U.S.C. § 1332(a)(2). Plaintiff may only assert jurisdiction under § 1332(a)(2) if diversity of citizenship among parties is complete. *Casas Off. Machines, Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668, 673 (1st Cir. 1994); *Sweeney v. Westvaco Co.,* 926 F.2d 29, 41 (1st Cir.) (citing *Strawbridge v. Curtiss,* 7 U.S. 3, Cranch 267 2 L.Ed. 435. In other words, this Court only has subject matter jurisdiction over this case if there is no plaintiff and no defendant that are citizens of the same state. *Id*. Plaintiff must make an affirmative showing that diversity is complete. *Oppenheim v. Sterling*, 368 F.2d 516, 518 (10th Cir. 1966)(Cert denied). The party invoking the court's diversity jurisdiction has the burden of proving domicile by a preponderance of the evidence. *De La Rosa v. De La Rosa*, 118 F.4th 393, 398 (1st Cir. 2024). In addition to complete diversity, Plaintiffs must plead facts that show that the amount in controversy exceeds $75,000. Where, as here, a case is brought on behalf of multiple claimants, the amount in controversy must be met for each claimant. *Abdel-Aleem v. OPK Biotech LLC,* 665 F.3d 38, 42 (1st Cir. 2012). The claims of multiple claimants cannot be combined to meet the amount in controversy requirement. *Id.*

If Plaintiff's general allegation that the dispute exceeds the jurisdictional minimum is challenged, Plaintiff bears the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount. *Andersen v. Vagaro, Inc.,* 57 F.4th 11, 15 (1st Cir. 2023) (quoting *Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991)). "Bald statements and round numbers" will not be sufficient to meet this requirement. *Abdel-Aleem,* 665 F.3d at 43.

**2. Plaintiff has not pled facts showing complete diversity.**

 **a. Plaintiff does not know where all the defendants are located.**

Not only has Plaintiff not pled facts sufficient to show that all members of the Mango DAO are diverse from all defendants, Plaintiff admits that it does not know where Defendants Does 1-10 are located. (Complaint, ¶ 20). While asserting diversity jurisdiction on the one hand, Plaintiff on the other hand explicitly states in the Complaint that "Does 1-10 inclusive, are individuals or entities of unknown residence…" (Complaint, ¶ 20). As such, the Complaint on its face fails to establish diversity jurisdiction and this Court does not have jurisdiction to adjudicate this matter.

Also, in this case, the claims raised by Mango Labs are by Plaintiff's own legal contention being brought by assignment of individual Mango DAO members' claims that Plaintiff asserts as being raised against Defendant.

 **b. Plaintiff cannot show Mango DAO members are diverse.**

As discussed above, Plaintiff has not alleged sufficient facts to demonstrate any right to proceed on behalf of the Mango DAO, or its individual members. However, if Plaintiff were able to demonstrate the right to proceed under a representational theory, such as in the posture of a derivative action, unless Mango DAO were a corporation, which has not been asserted by Plaintiff, this Court then would be required to look to each member of the Mango DAO to ensure each member of the Mango DAO was diverse from each defendant. There is no question but that Plaintiff will not be able to make this requisite showing to this Court. The Mango DAO comprises thousands of members, many if not most of whom are anonymous. Plaintiff does not, and cannot know the identities, let alone the citizenship and residence of every Mango DAO member. In addition, among the members that are personally known to Defendant Kramer, at least one is a citizen of Puerto Rico. (**Ex. A**, Kramer Cert., ¶ 15). This by itself invalidates diversity jurisdiction.

### 3. Plaintiff has not pled facts supporting the amount in controversy

Plaintiff baldly states that "because it involves a dispute between a citizen of a State and two citizens of foreign state and the amount at issue exceeds $75,000.000" this court has jurisdiction over this dispute under 23 U.S.C. § 1332(a)(2). (Complaint ¶21). Plaintiff further alleges that as a result of the alleged overpayment for certain MNGO tokens purchased from Defendants, the "damage" to the Mango DAO and its members exceeds $10,000,000. (Complaint ¶ 69). However, as noted above, Plaintiff does not allege that the Mango DAO itself is an entity capable of sustaining "damage", and the Mango DAO comprises thousands of members. Accordingly, Plaintiff has not alleged facts that would reasonably support the conclusion that any, let alone each, claimant sustained over $75,000 in damages.

### D. RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### 1. Standard

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts to support a plausible claim for relief. *See Doe v. Stonehill College, Inc.,* 55 F.4th 302, 316 (1st Cir. 2022); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (A plaintiff has the "obligation to provide the grounds of his entitle[ment] to relief..." (internal quotation marks omitted)); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). "A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the Court can reasonably infer that the defendant is liable for the misconduct alleged." *Rodriguez-Wilson v. Banco Santander de Puerto Rico,* 501 F.Supp.3d 53, 56 (D.P.R. 2020) (*citing Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir. 2011)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [a court] to draw on [its] judicial experience and common sense." *Zenón v. Guzmán,* 924 F.3d 611, 616 (1st Cir. 2019) (internal

quotation marks omitted). In reviewing a Rule 12(b)(6) motion to dismiss, a court "accept[s] as true all well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiffs." *Gargano v. Liberty Int'l Underwriters, Inc.,* 572 F.3d 45, 48 (1st Cir. 2009) (*citing Fitzgerald v. Harris,* 549 F.3d 46, 52 (1st Cir. 2008)); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,* 594 F.Supp.3d 433, 443 (D.P.R. 2019) (*citing Miss. Pub. Employees' Ret. Sys. v. Boston Scientific Corp.,* 523 F.3d 75, 85 (1st Cir. 2008)). However, the court does not "credit conclusory legal allegations [or] factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshon,* 63 F.4th 49, 55 (1st Cir. 2023); *see also Schatz v. Republican State Leadership Committee,* 669 F.3d 50, 55 (1st Cir. 2012) (Plainly, a court "ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."). Ultimately, a complaint's well-pled facts must nudge a claim "across the line from conceivable to plausible." *Ashcroft*, 556 U.S. at 680 (*citing Twombly*, 550 U.S. at 570).

2. **Plaintiff has not alleged facts supporting the application of Puerto Rico Law to this dispute.**

Courts sitting in diversity must apply the law of the forum in which they are located to determine which law to apply to the dispute. *Hartford Fire Ins. Co. v. CNA Ins. Co. (Europe) Ltd.,* 633 F.3d 50, 54 n. 7 (1st Cir. 2011) (citing *Montalvo v. Gonzalez–Amparo*, 587 F.3d 43, 46 (1st Cir. 2009)). The Puerto Rico Civil Code of 2020 has 33 articles addressing conflicts of law. All of Plaintiff's claims sound in Puerto Rico law, however; Plaintiff has alleged not one fact, nor cited one article of the Puerto Rico Civil Code to explain why Puerto Rico should apply to this dispute. Nor is there any compelling reason to think that Puerto Rico law should apply. As pled by Plaintiff, only one of 12 defendants is located here. There are no facts adduced that would show that the effects of Defendant's alleged actions were felt in Puerto Rico (In fact, were there allegations that

the effects of Defendant's alleged actions occurred in Puerto Rico, that would likely destroy any diversity jurisdiction of the court.)

Given Plaintiff's abject failure to allege facts demonstrating the application of Puerto Rico law, Defendant Kramer will not unnecessarily articulate an in depth analysis of the elements of each claim.  On its face, each claim raised in the Complaint fails to be raised under Puerto Rico law. While we are confident that Plaintiff fails to state a claim under Puerto Rico law, it is premature and a waste of this court's time to discuss in great detail unless and until Plaintiff has demonstrated the applicability of Puerto Rico law.

WHEREFORE, it is respectfully requested that for the reasons stated above, this Honorable Court dismiss the Complaint, or in the event this Honorable Court understands a record needs to be developed before ruling on jurisdiction, that it order discovery as to jurisdiction.

In San Juan, Puerto Rico, this 27th day of January, 2025.

I HEREBY CERTIFY that on this same date I uploaded a pdf version of this document to the Court's CM/ECF system, which will send notice of its filing electronically to all parties of record, through their counsel of record.

Respectfully submitted,

**S/ FRANCISCO E. COLÓN-RAMÍREZ**
Francisco E. Colón-Ramírez, Esq.
Bar No.: 210510
E-mail: fecolon@colonramirez.com

**COLÓN RAMÍREZ LLC**
PO Box 361920
San Juan, PR 00936-1920
Tel.: (888) 223-2364
Fax: (787) 425-4731

7975379

15