## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

MANGO LABS, LLC, a Wyoming limited
liability company,

      Plaintiff,

v.

JOHN KRAMER, an individual,
MAXIMILIAN SCHNEIDER, an individual,
and Does 1-10, et al.,

      Defendants.

CIVIL ACTION NO.: 3:24-cv-01469-GMM

**PLAINTIFF MANGO LABS'
OPPOSITION TO DEFENDANT JOHN
KRAMER'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................3

      A.     In 2022, Mango Markets Suffered a $114,000,000 Criminal Exploit that the DAO, with Mango Labs' help, Resolved by Making all Victims Whole. ..................................................................................................5

      B.     Defendants Attacked the Mango DAO in Its Weakened State. ............................5

      C.     Mango Labs Brought Claims Against Defendants on Behalf of Certain Mango DAO Members and the DAO Itself. ..............................................6

LEGAL STANDARD............................................................................................7

ARGUMENT ..................................................................................................10

I.      THIS COURT HAS SUBJECT MATTER JURISDICTION.     10

      A.     Mango Labs Has Standing. ..................................................................10

            1.     Mango Labs has sufficiently alleged an injury sufficient for standing via assignment. ....................................................... 11

            2.     Mango Labs sufficiently alleged a valid assignment by Mango DAO and individual members. ........................................... 11

            3.     The Assignment of Claims to Mango Labs was Not Improper or Collusively made to Invoke the Jurisdiction of the Court. ...................... 15

            4.     Mango Labs has sufficiently alleged derivative standing....................... 19

      B.     Subject matter jurisdiction exists under 28 U.S.C. § 1332. ...................................20

            1.     There is Complete Diversity Among the Named Plaintiff and Named Defendants.................................................................... 20

            2.     Mango Labs pled facts supporting the amount in controversy. ............... 23

II.     MANGO LABS ALLEGED FACTS TO SUPPORT CLAIMS FOR RELIEF, AND KRAMER'S MOTION ON 12(B)(6) GROUNDS SHOULD BE DENIED.     24

CONCLUSION..................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdel-Aleem v. OPK Biotech LLC,*
    665 F.3d 38 (1st Cir. 2012) ......................................................................................24

*Adelson v. Hananel,*
    510 F.3d 43 (1st Cir. 2007) ......................................................................................16

*Airlines Reporting Corp. v. S & N Travel, Inc.,*
    857 F. Supp. 1043 (E.D.N.Y. 1994), aff'd, 58 F.3d 857 (2d Cir. 1995) ................24

*Alers v. Barceló,*
    152 F. Supp. 3d 59 (D.P.R. 2016) ...........................................................................20

*Andersen v. Vagaro, Inc.,*
    57 F.4th 11 (1st Cir. 2023) .......................................................................................24

*Anvar v. Tanner,*
    549 F. Supp. 3d 235 (D.R.I. 2021) ..........................................................................10

*Aversa v. United States,*
    99 F.3d 1200 (1st Cir. 1996) ......................................................................................7

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.,*
    825 F.3d 28 (1st Cir. 2016) ......................................................................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...............................................................................................8, 9

*Benedict v. Seiberling,*
    17 F.2d 841 (N.D. Ohio 1927) ...........................................................................18, 19

*Bullard v. City of Cisco,*
    290 U.S. 179 (1933) .................................................................................................17

*Callahan v. Shepherd,*
    No. 17-CV-10508, 2018 WL 1041542 (D. Mass. Feb. 23, 2018) ..........................10

*Casas Office Machines v. Mita Copystar America, Inc.,*
    42 F.3d 668 (1st Cir. 1994) ......................................................................................21

*Cintron-Alonso v. GSA Caribbean Corp.,*
    602 F. Supp. 2d 319 (D.P.R. 2009) ...........................................................................4

*Collazo-Rosado v. Univ. of Puerto Rico,*
    775 F. Supp. 2d 376 (D.P.R. 2011) ...........................................................................2

*ConnectU LLC v. Zuckerberg,*
    522 F.3d 82 (1st Cir. 2008) ......................................................................................21

*Cruz-Martinez v. Hosp. Hermanos Melendez, Inc.,*
    475 F. Supp. 2d 140 (D.P.R. 2007) ..........................................................7, 8, 21, 23

*De La Rosa v. De La Rosa*,
    118 F.4th 393 (1st Cir. 2024)................................................................22

*Dennehy v. Frambes*,
    385 F. Supp. 2d 121 (D.P.R. 2005)........................................................17

*Dmitriev v. Mann*,
    597 F. Supp. 3d 484 (D. Mass. 2022)....................................................24

*Efron v. Embassy Suites (P.R.), Inc.*,
    47 F.Supp.2d 200 (D.P.R. 1999)............................................................19

*Faura Cirino v. United States*,
    210 F. Supp. 2d 46 (D.P.R. 2002)..........................................................10

*Foisie v. Worcester Polytechnic Inst.*,
    967 F.3d 27 (1st Cir. 2020)...............................................................8, 24

*Garcia Perez v. Santaella*,
    364 F.3d 348 (1st Cir. 2004)....................................................................7

*García-Catalán v. United States*,
    734 F.3d 100 (1st Cir. 2013)....................................................................8

*Gorman v. Coogan*,
    No. 03-173-P-H, 2004 WL 60271 (D. Me. Jan. 13, 2004) ...............14, 18

*Groma, LLC v. BuildRE, LLC*,
    668 F. Supp. 3d 40 (D. Mass. 2023) ......................................................16

*Harper v. Rettig*,
    46 F.4th 1 (1st Cir. 2022)........................................................................4

*Haskin v. Corporacion Insular De Seguros*,
    666 F. Supp. 349 (D.P.R. 1987)...............................................15, 17, 18

*Henley & Co. v. Miller Golf Equip. Corp.*,
    300 F.Supp. 872, 875-76 (D.P.R.1969)..................................................17

*Kowalski v. Gagne*,
    914 F.2d 299 (1st Cir. 1990)....................................................................4

*Kramer v. Mango Labs, LLC et al.*,
    Civil Action No: 3:24-cv-01587 ..............................................................4

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015)....................................................................22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................10

*In re Lyman-Cutler, LLC*,
    632 B.R. 355 (Bankr. D. Mass. 2021) .............................................14, 18

*Mango Labs, LLC v. Avraham Eisenberg*,
    Case No.: 23 Civ. 665 ............................................................................13

*Marrero v. Costco Wholesale Corp.*,
52 F. Supp. 3d 437 (D.P.R. 2014).........................................................................7

*McCulloch v. Velez*,
364 F.3d 1 (1st Cir. 2004)..................................................................................15

*McNutt v. General Motors Acceptance Corporation*,
298 U.S. 178 (1936).........................................................................................23

*Medina-Rodriguez v. Fernandez Bakery, Inc.*,
255 F. Supp. 3d 334 (D.P.R. 2017)..................................................7, 8, 9, 24, 25

*MVM Inc. v. Rodriguez*,
568 F. Supp. 2d 158 (D.P.R. 2008).......................................................................4

*Nat'l Recovery Sys. v. Ornstein*,
541 F. Supp. 1131 (E.D. Pa. 1982)....................................................................24

*Negron-Gaztambide v. Hernandez-Torres*,
35 F.3d 25 (1st Cir. 1994)...................................................................................8

*New Ponce Shopping Ctr., S.E. v. Integrand Assur. Co.*,
86 F.3d 265 (1st Cir. 1996)...............................................................................25

*Niagara Bottling, LLC v. CC1 Ltd. P'ship*,
381 F. Supp. 3d 175 (D.P.R. 2019)....................................................................8, 9

*Ocasio-Hernandez v. Fortuno-Burset*,
640 F.3d 1 (1st Cir. 2011)...................................................................................9

*Oppenheim v. Sterling*,
368 F.2d 516 (10th Cir. 1966) ..........................................................................22

*Ortiz Mercado v. Puerto Rico Marine Mgmt., Inc.*,
736 F. Supp. 1207 (D.P.R. 1990).......................................................................21

*In re Papatones*,
143 F.3d 623 (1st Cir. 1998)...............................................................................4

*Pataud v. United States Citizenship & Immigration Services, Boston Field Office*,
501 F. Supp. 3d 22 (D. Mass. 2020) ....................................................................4

*Pure Oil Co. v. Puritan Oil Co.*,
127 F.2d 6 (2d Cir. 1942)..................................................................................19

*Rivera-Pedrogo v. Villamil-Wiscovitch*,
No. CV 22-1039 (CVR), 2023 WL 2601999 (D.P.R. Mar. 21, 2023) ....................2

*Rodriguez–Reyes v. Molina–Rodriguez*,
711 F.3d 49 (1st Cir. 2013).................................................................................9

*Sabroso Pub., Inc. v. Caiman Records Am., Inc.*,
141 F. Supp. 2d 224 (D.P.R. 2001)....................................................................11

*Santiago Collazo v. Franqui Acosta*,
721 F. Supp. 385 (D.P.R. 1989).........................................................................11

*Sepúlveda-Villarini v. Dep't of Educ. of P.R.*,
   628 F.3d 25 (1st Cir. 2010)...................................................................9

*Steinberg v. Toro*,
   95 F.Supp. 791 (D.P.R. 1951)...........................................................18

*Stewart v. Tupperware Corp.*,
   356 F.3d 335 (1st Cir. 2004)..............................................................23

*Sweeney v. Westvaco Co.*,
   926 F.2d 29 (1st Cir. 1991)................................................................22

*Taxes of Puerto Rico, Inc. v. TaxWorks, Inc.*,
   5 F. Supp. 3d 185 (D.P.R. 2014).......................................................13

*TC Investments, Corp. v. Becker*,
   733 F. Supp. 2d 266 (D.P.R. 2010)...................................................19

*Theriault v. Genesis Healthcare LLC*,
   890 F.3d 342 (1st Cir. 2018)..............................................................25

*Thomson v. Gaskill*,
   315 U.S. 442 (1942)...........................................................................23

*Toste Farm Corp. v. Hadbury, Inc.*,
   70 F.3d 640 (1st Cir.1995)................................................................15

*Toth v. Everly Well, Inc.*,
   118 F.4th 403 (1st Cir. 2024).............................................................13

*Town of Barnstable v. O'Connor*,
   786 F.3d 130 (1st Cir. 2015)..............................................................21

*Tropical Air Flying Services, Inc. v. Carmen Feliciano de Melecio*,
   158 F. Supp. 2d 177 (D.P.R. 2001).....................................................8

*United States v. Nixon*,
   418 U.S. 683 (1974)...........................................................................13

*USA v. Eisenberg*,
   Case No.: 1:23-cr-00010-AS .............................................................13

*Viqueira v. First Bank*,
   140 F.3d 12 (1st Cir. 1998).................................................................7

*Warth v. Seldin*,
   422 U.S. 490 (1975)...........................................................................11

## Statutes

15 U.S.C. § 97.........................................................................................19

28 U.S.C. § 1332..............................................................................2, 10, 20

28 U.S.C. § 1332(a)...........................................................................22, 23

28 U.S.C. § 1332(a)(1)..............................................................................7

28 U.S.C. § 1359 ..................................................................................................15

28 U.S.C. § 1441(b)(1) .........................................................................................22

**Other Authorities**

Fed. R. Civ. P. § 12(b)(1) ..........................................................................2, 4, 7, 21

Fed. R. Civ. P. § 12(b)(2) .......................................................................................2

Fed. R. Civ. P. § 12(b)(6) ..........................................................................3, 7, 8, 24

Fed. R. Civ. P. § 23.1 ...........................................................................................19

Fed. R. Civ. P. § 23.1(a) ......................................................................................19

Fed. R. Civ. P. § 23.1(b) ......................................................................................19

Fed. R. Evid. 201(b) ...............................................................................................4

Rule 12(b)(1) ........................................................................................................20

Rule 12(b)(2) ........................................................................................................20

Rule 12(b)(6) ........................................................................................................25

Fed. R. Evid. 201(b) ...............................................................................................4

**INTRODUCTION**

Defendant John Kramer's Motion to Dismiss does not contest that he breached his fiduciary duties to Mr. Dafydd Durairaj ("Durairaj") (the owner of Plaintiff Mango Labs, LLC), Mr. Tyler Shipe ("Shipe"), and other Mango DAO members, and defrauded them all by deceptively purchasing Mango (MNGO) tokens from the bankrupt FTX estate and clandestinely forcing a sale to the DAO at extreme markups. Nor does he dispute that he, along with his partner, Defendant Maximillian Schneider ("Schneider"), used the fraudulently acquired FTX tokens to loot the Mango DAO treasury.

Kramer's Motion instead voyages far outside the Complaint's allegations to attempt to justify dismissal on standing, diversity, and 12(b)(6) grounds through nothing more than conclusory, self-serving, and inaccurate assertions. Even as a summary judgment motion in disguise, Kramer's arguments do nothing to warrant dismissal as a matter of law. Although certain evidence concerning subject matter jurisdiction is permitted at this stage, Kramer's submissions do not clear the bar. His self-serving testimony lacks evidentiary quality and disregards Mango Labs' detailed factual allegations concerning Defendants' fraud. It is far from enough to overcome the presumption that the Court should take Mango Labs' allegations as true and make all inferences in Mango Labs' favor. Kramer's positions do nothing other than highlight significant factual disputes, particularly with respect to Defendants' fraud, precluding Kramer's summary judgment in disguise.

**Standing.** Kramer's standing arguments are defeated by accepting as true the Complaint's allegations that Durairaj, Shipe, other Mango DAO members, and the DAO itself assigned their claims to Mango Labs prior to commencement of this case. The Complaint sets forth in detail, including by way of citation to the assignment language and votes themselves, how these assignments occurred. They are consistent with other assignments Mango Labs has received in

1

other fraud cases, which multiple federal courts have upheld. Kramer has no argument for why Durairaj's assignment or that of the other individual Mango DAO members are not effective based on the Complaint's allegations.

All Kramer can argue is that the DAO entity itself did not assign claims because Kramer used his fraudulently acquired tokens to vote against that particular assignment. This ignores the comprehensive allegations in the Complaint that Kramer's votes were not effective to stop the DAO's assignment of its claims. Even if the assignment of the DAO's claims was stopped by Kramer's fraudulent votes—which, under the law, it was not—Mango Labs pleads a derivative theory in the alternative that should permit it to proceed. Not to mention, all of Kramer's purported issues are easily curable with updated assignment contracts, if needed, as well as additional DAO votes, if needed. Here again, all Kramer does is introduce disputes of facts that require litigation. He does not come close to showing as a matter of law that there was no proper assignment of any person or entity's claims to Mango Labs, which is what he would need to do for dismissal.

**Diversity.** As to the diversity issues, Kramer once again takes up speculative factual positions about the citizenship of the assignors, ignoring that the Complaint clearly pleads diversity of the named Plaintiff and Defendants in this action. The Complaint contains plain allegations that there is complete diversity between the named plaintiff (Mango Labs), a Wyoming and North Carolina citizen, and the named defendants (Kramer (Puerto Rico) and Schneider (United Kingdom)) and that the amount in controversy well exceeds the jurisdictional minimum, in satisfaction of 28 U.S.C. § 1332.[1] Established law holds that the assignee's citizenship—here,

---

[1] Although Kramer moves to dismiss under Rule 12(b)(2) for lack of diversity jurisdiction, the proper procedural vehicle is Rule 12(b)(1), not Rule 12(b)(2) grounds, which addresses personal jurisdiction over a party (and which Kramer does not challenge). *See Collazo-Rosado v. Univ. of Puerto Rico*, 775 F. Supp. 2d 376, 379 (D.P.R. 2011) (noting that a 12(b)(1) motion is the vehicle for challenging a court's subject matter jurisdiction); *Rivera-Pedrogo v. Villamil-Wiscovitch*, No. CV 22-1039 (CVR), 2023 WL 2601999, at *1-2 (D.P.R. Mar. 21, 2023) (finding diversity was present and denying defendant's 12(b)(1) motion to dismiss).

Mango Labs—is the proper consideration for diversity in the context of an assignment. Further, Mango Labs is not required to identify the citizenship of Defendants Does 1-10 as they are not named defendants. In any event, zero of the fourteen unique blockchain wallets (which include those belonging to Mr. Durairaj and Mr. Shipe) who assigned their claims against Kramer and Schneider are known to be citizens of Puerto Rico. All of the individual assignors are themselves diverse from Kramer. Because Kramer's theories for both standing and diversity are aimed solely at attacking the DAO's claims, he concedes that every individual assignor's claims must proceed.

**12(b)(6).**  Kramer's 12(b)(6) Motion fails because Kramer does not contend that Mango Labs failed to state claims upon which relief can be granted, much less address the sufficiency of the claims. Instead, Kramer focuses on a choice-of-law red herring and contends that Mango Labs did not allege facts supporting the application of Puerto Rico law. But the determination of which state's law applies is not necessary (and here too is premature) at the motion to dismiss stage; it is particularly questionable given that Kramer does not contend that a different law should apply or why that would matter. Despite Kramer's complete failure to address whether Mango Labs sufficiently alleged valid claims under Puerto Rican law, Mango Labs has more than carried its burden at the pleading stage to overcome Kramer's Motion on 12(b)(6) grounds.

Because Kramer's arguments fail under the applicable motion to dismiss standard in light of the Complaint's allegations, and because they also fail under a summary judgment standard given the massive factual disputes Kramer raises, the Court should deny his Motion and permit the case to proceed.

## FACTUAL AND PROCEDURAL BACKGROUND

Mango Markets is a decentralized finance protocol launched in 2021. (Compl. ¶¶ 2, 23.) Through the Mango Markets protocol, people are able to borrow, lend, and trade cryptocurrency and cryptocurrency derivatives. (*Id.*, ¶ 23.) Durairaj founded Mango Markets, and Schneider was

also involved in the founding. (Declaration of Dafydd Durairaj ("Durairaj Decl."), ¶ 1.) The Court is familiar with the factual and procedural background of this case based on Mango Labs' Complaint, motion for alternative service against Defendant Schneider [ECF No. 15], and Mr. Durairaj and Mr. Shipe's opposition to Kramer's preliminary injunction request.[2]

The organization that governs the Mango Markets protocol is the Mango DAO. (Compl., ¶ 2.) The Mango DAO has members that take on trusted roles which establish fiduciary duties. (Compl., ¶ 25.) MNGO token holders can make governance decisions about the protocol by voting with their tokens. (Compl., ¶ 24.) Mango Labs is an entity that has been funded by the Mango DAO to develop software for Mango Markets and to manage Mango DAO's legal claims, including victims' claims against Avraham Eisenberg, the DAO's claims against Kramer and Schneider, and others. (Compl., ¶ 17; Opposition to Kramer's Motion for Preliminary Injunction ("PI Opp.") at 5.) Durairaj is the owner of Mango Labs. (PI Opp. at 6.)

Kramer became the treasurer of the Mango DAO, and he, along with Schneider, took on significant and trusted roles within the Mango DAO, comparable to officers and partners of the DAO. (Compl., ¶ 25.) In their roles with the DAO, Defendants drove forward the governance and operations of the Mango DAO and were charged with handling highly sensitive and confidential tasks. (*Id.*, ¶ 4.)

---

[2] Dkt. No. 30 in *Kramer v. Mango Labs, LLC et al.*, Civil Action No: 3:24-cv-01587 ("Related Action"), pending in this same Court. For purposes of this motion to dismiss, the Court may take judicial notice of the facts in other matters in the same and other courts in determining subject matter jurisdiction on 12(b)(1) grounds. *See Harper v. Rettig*, 46 F.4th 1, 5 (1st Cir. 2022) (noting the court could "consider…facts susceptible to judicial notice" in determining a motion to dismiss under 12(b)(1) for subject matter jurisdiction); *Cintron-Alonso v. GSA Caribbean Corp.*, 602 F. Supp. 2d 319, 321–22 (D.P.R. 2009) (same); *Pataud v. United States Citizenship & Immigration Services, Boston Field Office*, 501 F. Supp. 3d 22, 28 (D. Mass. 2020) (same); *see also Kowalski v. Gagne*, 914 F.2d 299, 305–06 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."); *MVM Inc. v. Rodriguez*, 568 F. Supp. 2d 158, 163–64 (D.P.R. 2008) (citing Fed. R. Evid. 201(b)) (same); *In re Papatones*, 143 F.3d 623, 624 n. 3 (1st Cir. 1998) (same).

**A.      In 2022, Mango Markets Suffered a $114,000,000 Criminal Exploit that the DAO, with Mango Labs' help, Resolved by Making all Victims Whole.**

In October 2022, an individual named Avraham Eisenberg ("Eisenberg") illegally exploited Mango Markets.  (Complaint [ECF No. 1] ("Compl."), ¶¶ 14, 26.)  Eisenberg, through fraud and deception, converted approximately $114 million from Mango Markets depositors into his own accounts.  (Compl., ¶ 14.)  Through Mango Labs' work, the DAO recovered $67,000,000 of the misappropriated assets and used the DAO's treasury to supplement such that all Mango Markets depositors were made whole within weeks of the attack.  (Compl., ¶ 27.)  In the subsequent criminal case against Eisenberg, a jury convicted Eisenberg of fraud, commodities market manipulation, and wire fraud.  (Compl., ¶ 28.)  Eisenberg's attack on Mango Markets also led to regulatory investigations of Mango Markets itself, including the Mango DAO.  (Compl., ¶ 30.)

Mango Labs shouldered the primary burden of handling these investigations for the DAO's benefit.  (Compl., ¶ 30.)  The DAO funded Mango Labs to lead the charge on its legal matters.  (*Id.*, ¶ 17.)  When Defendants frustrated funding for Mango Labs to make it easier to get away with their fraud, Mango Labs continued its work despite uncertainty about funding.  (*Id.*, ¶ 66.)

**B.      Defendants Attacked the Mango DAO in Its Weakened State.**

While Mango Labs was handling the DAO's legal matters, including Eisenberg's attack and multiple regulatory investigations, Defendants conspired to take advantage of the DAO in its vulnerable state.  In November 2022, FTX, a cryptocurrency exchange filed for bankruptcy. (Compl., ¶ 3.) Prior to its collapse, FTX allowed its users to deposit MNGO. (*Id.*) The bankruptcy estate assumed control of the MNGO.  (*Id.*)  In October 2023, the bankruptcy court ordered the FTX estate to sell assets, including the MNGO tokens.  (*Id.*)

Defendants, in their trusted positions within the DAO, represented to the DAO and its members that they were going to buy back the MNGO tokens from the FTX estate and transfer

them close to cost to the DAO. (Compl., ¶ 6.) This, of course, would benefit the DAO and MNGO token holders. (*Id.*) After the Eisenberg attack, the DAO wished to recover FTX's MNGO tokens itself. This was preferable to having them fall into the hands of a malicious actor who could abuse the tokens' voting power to steal from the DAO. (*Id.*)

But Defendants instead conspired to buy the tokens for themselves while hiding their identities from the DAO. (Compl., ¶ 7.) Upon information and belief, they purchased approximately 330 million MNGO that had been held by the FTX estate. (*Id.*) They then—just hours before the end of voting—anonymously deposited all 330 million tokens into the Mango DAO,[3] thereby giving themselves more voting power, which they used to pass a proposal for Mango DAO to buy the tokens at an artificially inflated price. (Compl., ¶ 8.)

Although Mango Labs and members of the DAO have tried to convince Defendants to transfer the tokens to the DAO at cost as they represented they would do, and as their fiduciary duties required, they have refused. (Compl., ¶ 14.) Instead, they have threatened and tried to intimidate DAO members. They have also attempted to block the DAO's funding for Mango Labs' efforts to pursue claims against Eisenberg and handle other legal matters for the DAO. (*Id.*, ¶ 66.)

### C. Mango Labs Brought Claims Against Defendants on Behalf of Certain Mango DAO Members and the DAO Itself.

Consistent with previous practice for handling legal claims involving the Mango DAO, the DAO and certain DAO members, including Durairaj, the owner of Mango Labs, and Shipe, voted to assign their claims against Kramer and Schneider to Mango Labs, (Compl., ¶¶ 2, 17, 70-73; PI Opp. at 9; Durairaj Decl., ¶¶ 18, 21; Declaration of Tyler Shipe, ¶¶ 2, 3.) Eighteen blockchain wallets voted to manifest their assent to the assignment and assign their claims, comprising at least

---

[3] Mango DAO members were suspicious about the deposited tokens. (Compl. at ¶ 9.) Nevertheless, the DAO purchased 72.8 million MNGO tokens under the proposal. (*Id.* at ¶ 13.)

5 known DAO members other than Defendants, none of whom are citizens of Puerto Rico. (Durairaj Decl., ¶¶ 20, 21.) Kramer and Schneider voted no. Of the total nay votes, approximately 94% were from wallets controlled by Defendants. (*Id.*, ¶ 21) Mr. Adrian Brzeziński also voted no, due to—on information and belief—his fear of Defendants' as well as his desire to profit himself at the expense of the DAO and other members from aligning with Defendants' scheme. (*Id.*; PI Opp. at 26.)

Shortly thereafter, on October 7, 2024, Mango Labs filed its Complaint against Defendants alleging that they improperly took advantage of their positions as trusted Mango DAO members to purchase the FTX MNGO tokens at issue for their own benefit.

## LEGAL STANDARD

Under either a Rule 12(b)(1) or a Rule 12(b)(6) standard, the Court must accept the "complaint's well-pled facts as true and views them—and the inferences drawn from them—in a light most favorable to the pleader." *Medina-Rodriguez v. Fernandez Bakery, Inc.*, 255 F. Supp. 3d 334, 339-340 (D.P.R. 2017) (citing *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)). Thus, the Court "must construe the complaint liberally." *Id.* (citing *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996)).

**Rule 12(b)(1).** "Rule 12(b)(1) allows a court to dismiss a complaint when the Court's subject-matter jurisdiction is not properly alleged." *Medina-Rodriguez*, 255 F. Supp. 3d at 339 (citation omitted). Federal courts have subject matter jurisdiction over controversies arising between citizens of different states, provided that the amount in controversy exceeds $75,000. *Cruz-Martinez v. Hosp. Hermanos Melendez, Inc.*, 475 F. Supp. 2d 140, 142-43 (D.P.R. 2007) (citing *Garcia Perez v. Santaella,* 364 F.3d 348, 350 (1st Cir. 2004); *see also* 28 U.S.C. § 1332(a)(1)). Dismissal is only proper if the "facts alleged reveal a jurisdictional defect not otherwise remediable." *Marrero v. Costco Wholesale Corp.*, 52 F. Supp. 3d 437, 439 (D.P.R.

2014) (citation omitted).  "A court should not dismiss a complaint for lack of subject matter jurisdiction unless it is clear that plaintiff will be unable to prove *any set of facts which would entitle him to recovery*." *Cruz-Martinez*, 475 F. Supp. 2d at 142–44 (citations omitted) (emphasis added).[4]

A defendant can challenge jurisdictional facts in one of two ways.  *Cruz-Martinez*, 475 F. Supp. 2d at 144.  The first way accepts the plaintiff's version of the jurisdictionally significant facts as true but addresses the sufficiency.  *Id.* (citation omitted).  This type of challenge requires "the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." *Id.* (citation omitted).  The second way, "is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and ***proffering materials of evidentiary quality*** in support of that position." *See id.* (emphasis added).  This is a "factual challenge," which demands a "differential fact finding" by the court.  *See id.*

**Rule 12(b)(6).**  To survive a Rule 12(b)(6) motion, a complaint must simply contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Medina-Rodriguez*, 255 F. Supp. 3d at 340–41 (citing *Twombly*, 550 U.S. at 570).  A court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." *Id.* (citation omitted).  A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 49 (1st Cir. 2020) (citations omitted).[5]  A "short and plain" statement needs only enough detail to provide a

---

[4] *See also Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994); *Tropical Air Flying Services, Inc. v. Carmen Feliciano de Melecio*, 158 F. Supp. 2d 177, 185 (D.P.R. 2001).

[5] The First Circuit has outlined two considerations for courts to note when analyzing a motion to dismiss. *Niagara Bottling, LLC v. CC1 Ltd. P'ship*, 381 F. Supp. 3d 175, 181 (D.P.R. 2019) (citing *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013)).  First, a complaint that "contains enough facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*." *Id.* (citation omitted).  Second, courts should accord "some latitude" in cases where, like here, "[a] material part of the information needed is likely to be within the defendant's control." *Id*. (citation omitted).

defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 11-12 (1st Cir. 2011) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id.* at 12 (citing *Iqbal*, 129 S.Ct. at 1951). If the factual content of the complaint, viewed in the light most favorable to the plaintiff, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim has facial plausibility. *Id.* at 11–12. (citing *Iqbal*, 129 S.Ct. at 1949).

Although "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim," it is "not necessary to plead facts sufficient to establish a prima facie case" in order to survive a motion to dismiss. *Medina-Rodriguez*, 255 F. Supp. 3d at 341 (citing *Rodriguez–Reyes v. Molina–Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013)). Although evaluating a claim's plausibility requires a "court to draw on its judicial experience and common sense," the court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Ocasio-Hernandez*, 640 F.3d at 12 (citing *Twombly*, 550 U.S. at 556). "The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes 'pleaded facts to be true and read in a plaintiff's favor' 'even if seemingly incredible.'" *Niagara Bottling, LLC*, 381 F. Supp. 3d at 180–81 (citing *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010)). Further, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if ... a recovery is very remote and unlikely." *Ocasio-Hernandez*, 640 F.3d at 12–13 (quoting *Twombly*, 550 U.S. at 556). Specific information, even if not in the form of admissible evidence, is generally enough to survive the motion to dismiss stage; only pure speculation is not. *Niagara Bottling, LLC*, 381 F. Supp. 3d at

181 (citation omitted).

## ARGUMENT

## I.    THIS COURT HAS SUBJECT MATTER JURISDICTION.

Kramer challenges the sufficiency of Mango Labs' jurisdictional allegations, contending that: (1) there was no valid assignment, (2) Mango Labs may not bring the suit in a derivative capacity, and (3) the Court should look to the members of the DAO for purposes of the diversity analysis.  *See, e.g., Faura Cirino v. United States*, 210 F. Supp. 2d 46, 49 (D.P.R. 2002) (finding that defendants asserted a sufficiency challenge; therefore, the court "credit[ed] Plaintiffs' version of the procedural facts...." (*Id.* at 50.)).  Kramer then makes one supported, conclusory statement that he knows of at least one member who is a citizen of Puerto Rico, which does not constitute material of evidentiary quality sufficient to raise a factual inquiry.

Here, Mango Labs sufficiently pleads facts demonstrating that this Court has subject matter jurisdiction, including sufficient standing, diversity, and the amount in controversy for purposes of jurisdiction under 28 U.S.C. § 1332.  As such, the Court should treat Mango Labs' well-pled facts as true.  *See Callahan v. Shepherd*, No. 17-CV-10508, 2018 WL 1041542, at *2–3 (D. Mass. Feb. 23, 2018) (treating motion as a sufficiency challenge and construing the complaint liberally, "treating all well-pled facts as true and drawing all reasonable inferences in the plaintiff's favor" because defendants did not controvert the factual allegations in the complaint and offered no "materials of evidentiary quality in support of [their] position[;]" the defendants thus failed to state a factual challenge); *see also Anvar v. Tanner*, 549 F. Supp. 3d 235, 239 (D.R.I. 2021) (finding that, based on the facts alleged, plaintiff's harm was concrete and particularized and was sufficient for standing; thus, the court denied defendants' "factual challenge to standing…..").

### A.    Mango Labs Has Standing.

Article III standing requires that Mango Labs "suffered an 'injury in fact.'" *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The injury must be such that it 'fairly can be traced to the challenged action' . . . and must be of the kind likely to be redressed by a favorable decision." *Santiago Collazo v. Franqui Acosta*, 721 F. Supp. 385, 388 (D.P.R. 1989) (citations and quotations omitted). A plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

### 1.    Mango Labs has sufficiently alleged an injury sufficient for standing via assignment.

Kramer's argument that Mango Labs has not sufficiently plead injury, (Mot. at 5), is misplaced. Where, as here, others assign their claims to the plaintiff, the plaintiff is permitted to stand in the place of the injured parties and assert claims on the injured parties' behalf. *See Sabroso Pub., Inc. v. Caiman Records Am., Inc.*, 141 F. Supp. 2d 224, 228 n.4 (D.P.R. 2001) ("[B]y virtue of the valid assignment. . . , we hold that Plaintiff has standing to bring the breach of contract claims."). To be sure, Mango Labs does not have to be injured—it brings claims on behalf of the parties who validly assigned their claims against Defendants to Mango Labs, including Durairaj, a founding DAO member, and others. Defendants' votes against assignment using their manufactured and invalid voting power as a result of the fraudulently obtained tokens were properly not considered and did not count against those validly assigned by certain other members.[6]

### 2.    Mango Labs sufficiently alleged a valid assignment by Mango DAO and individual members.

Mango DAO members and the Mango DAO itself assigned their claims to Mango Labs,

---

[6] Apart from the assignments, Kramer has no response to Mango Labs' allegations that it itself has been injured, including by Kramer and Schneider's efforts to block Mango Labs' funding for pursuing victims' and DAO members' legal claims against Eisenberg. (Compl., ¶¶ 14, 66.) This independently defeats Kramer's Article III standing challenge.

which was consistent with how the DAO handled prior legal issues.  (Compl., ¶¶ 2, 17, 28, 70-73.)

For example, Mango Labs alleges:

- "Mango Labs has been assigned the claims of the Mango DAO and individual members of the Mango DAO in this action."  (Compl., ¶ 2.)

- "In this action, Mango Labs has been assigned Mango DAO's claims based on a vote of Mango DAO members, as well as several individual Mango DAO members' claims, including Mango Labs' owner," Durairaj.  (*Id.*)

- "Mango Labs presented a governance proposal to the Mango DAO to assign the Mango DAO's and individual members' claims against Defendants to Mango Labs."  (*Id.*, ¶ 70.)

- "Following a public discussion of Defendants' conduct…, the valid votes of Mango DAO members who participated in the assignment vote were sufficient to bind the assignment proposal to the Mango DAO."  (*Id.*, ¶ 71.)

- "Defendants, on information and belief, used their own fraudulently acquired MNGO tokens to vote against the proposal.  As a result, their votes are not valid and do not effectively change the outcome of the Mango DAO assignment vote, which successfully assigned the claims of Mango DAO with respect to Defendants' conduct at issue in this case to Mango Labs."  (*Id.*, ¶ 72.)

- "Apart from the claims of Mango DAO, the assignment vote also resulted in multiple Mango DAO individual members' claims—all those that voted in favor—being assigned to Mango Labs."  (*Id.*, ¶ 73.)

- "Mango Labs has been assigned claims of multiple members of the Mango DAO who were members at the time of Defendants' unlawful conduct and transactions."  (*Id.*, ¶ 74.)

The assignment process required Mango DAO members to unambiguously affirm their assent to the terms of the assignment by voting "yes" to Mango Lab's governance proposal on the Mango DAO's Discord channel.  (Compl., ¶ 71.)  It assigned the "rights and claims" of "individual members" of the DAO who voted, not just the DAO itself.  (Durairaj Decl., ¶ 19.)  Durairaj, for instance, has been significantly injured by Defendants' conduct because the looting of the treasury directly affects his rights.  (*Id.*, ¶ 23.)  So too with Mr. Shipe.  Others assigned their claims as well, comprising of at least 5 known individuals across over a dozen wallets.  (*Id.*, ¶¶ 18, 20, 21.)

This assignment is consistent with previous assignments to Mango Labs.  For example, Mango Market depositors who lost assets as a result of Eisenberg's attack assigned their claims to

Mango Labs, which the court in *Mango Labs, LLC v. Avraham Eisenberg*, Case No.: 23 Civ. 665, in the United States District Court, Southern District of New York, concluded constituted a valid assignment, and thus Mango Labs sufficiently alleged standing. (Durairaj Decl., Ex. 1, at 7:4-8:4.) Also, in the criminal case against Eisenberg, *USA v. Eisenberg*, Case No.: 1:23-cr-00010-AS, another judge out of the Southern District of New York, applied the standard set forth in *United States v. Nixon*, 418 U.S. 683 (1974), to protect a victim from harassment to narrow discovery requests to Mango Labs, thereby acknowledging that Mango Labs properly stood in the shoes of victims who assigned claims to it. (Durairaj Decl., Ex. 2, at 405:5-10.)

Kramer's assertions regarding the governance proposal not being valid because it had no executable code is also misplaced. (Mot. at 7.) A previous proposal concerned settlement with the SEC, which led to a consent judgment in the Southern District of New York. (Durairaj Decl., ¶ 10.) Another previous proposal appointed a DAO representative to sign for the DAO in the context of regulatory settlements. (Durairaj Decl., ¶ 17.) Neither of these proposals were in executable code. Further, Kramer's arguments that because there is no rule that certain tokens cannot be validly used for voting on governance proposals in the Mango litepaper or the Mango Markets Terms and Conditions does not mean that the DAO cannot disregard the votes made with fraudulently obtained tokens. Indeed, the assignment could have been accomplished by using any type of document. All that is needed to assign is notice and manifestation of assent. Mango Labs here simply used the governance forum as a mechanism to provide notice and track assent. *See Toth v. Everly Well, Inc.*, 118 F.4th 403, 411 (1st Cir. 2024) (finding that "an online agreement that requires a user to affirmatively accept its terms by clicking a checkbox . . . usually create equivalent contractual obligations."); *Taxes of Puerto Rico, Inc. v. TaxWorks, Inc.*, 5 F. Supp. 3d 185, 188 (D.P.R. 2014) (holding that "clickwrap" agreements where assent is explicit are valid

13

and finding that "the plaintiffs explicitly accepted [the agreement] when they clicked on the prompt" stating accept). Regardless, this is a disputed factual issue and does not justify dismissal.

Moreover, Kramer's conclusory assertions regarding the validity of Durairaj's proposal and the DAO's and certain member's votes to assign their claims to Mango Labs fail as a matter of law. As Mango Labs alleged in detail: Defendants fraudulently obtained Mango tokens for themselves and deceptively sold them back to the DAO at an extreme markup (Compl., ¶¶ 5-13, 15, 33-57); Defendants used their fraudulently obtained tokens to vote against the proposal to assign claims to Mango Labs (Compl., ¶ 72); and "[a]s a result, [Defendants'] votes [were] not valid and [did] not effectively change the outcome of the Mango DAO assignment vote, which successfully assigned the claims of Mango DAO with respect to Defendants' conduct at issue in this case to Mango Labs." (Compl., ¶ 72.) As Mango Labs unambiguously alleged, after excluding the invalid votes of Defendants' tokens, the remaining valid votes of Mango DAO members was sufficient to pass the assignment proposal. (Compl., ¶¶ 71-73.) Contrary to Kramer's assertions (Mot. at 6), Mango Labs provided a basis for its claim that the valid votes were sufficient to bind the assignment proposal to the DAO. (Compl., ¶¶ 72-73.)

Defendants' use of fraudulently obtained tokens to engage in such a self-dealing act as voting against a proposal to assign claims against Defendants is void as a matter of law and cannot serve to defeat a valid assignment. *See Gorman v. Coogan*, No. 03-173-P-H, 2004 WL 60271, at *10 (D. Me. Jan. 13, 2004) (voiding shareholders' votes when such votes were obtained in violation of applicable securities fraud laws); *In re Lyman-Cutler, LLC*, 632 B.R. 355, 416-17 (Bankr. D. Mass. 2021) (voiding member's self-dealing actions that caused entity to enter a contract as unfair, noting that the "other members were afforded no opportunity" to vote on it, considering that the member "had sufficient membership interest to effectively veto the contract").

14

Regardless, Kramer's assertions that Defendants' votes were purportedly sufficient to vote against the assignment of claims raises numerous disputed factual issues and would require the Court to address the merits of Mango Labs' fraud and fiduciary duty claims against Defendants, issues that should not be adjudicated on a motion to dismiss. Even a motion for summary judgment would fail on the current record, given the disputed factual issues. Further, Kramer's suggestion that because the assignment proposal did not mention that assignment could still occur if the proposal did not pass is misplaced. (Mot. at 8.) To be sure, Mango Labs could have easily introduced another assignment proposal—and still can do so if needed.

### 3.  The Assignment of Claims to Mango Labs was Not Improper or Collusively made to Invoke the Jurisdiction of the Court.

Without citing to any authority, Kramer contends that the assignment of claims to Mango Labs was improper or collusive under 28 U.S.C. § 1359. (Mot. at 10.) His contentions are misplaced or demonstrably false and do not lead to the conclusion that assignment of claims was improper or collusive to invoke the Court's jurisdiction.

28 U.S.C. § 1359 provides: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." The First Circuit has held—with respect to assignments between parties that are not related—as in the present case, that a plaintiff must show that the assignment was "legitimate and not pretextual." *Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 644 (1st Cir.1995). Such showing includes "a legitimate reason for the transfer, that is, a reason unrelated to the fabrication of federal court jurisdiction." *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004). In looking at whether an assignment is improperly or collusively made, courts look to whether the assignment was real or colorable and whether the assignee has some independent, pre-existing legitimate interest in the causes of action assigned to it. *See Haskin v. Corporacion Insular*

*De Seguros*, 666 F. Supp. 349, 354 (D.P.R. 1987).

Mango Labs has carried its burden at the pleading stage that its assignment was not improperly or collusively made, and Kramer's conclusory statements otherwise (and which are contradicted by the allegations in the Complaint) are not enough to justify dismissal. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016) ("For the purpose of examining the merits of such a jurisdictional proffer, we—like the district court—take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts. We may, of course, take into account undisputed facts put forth by the defendant.") (citations omitted); *Groma, LLC v. BuildRE, LLC*, 668 F. Supp. 3d 40, 45 (D. Mass. 2023) ("While a defendant may also offer evidence, the defendant's evidentiary proffers only 'become part of the mix ... to the extent that they are uncontradicted.'") (quoting *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)).

*First*, Kramer suggests that Mango Labs was required to plead facts concerning the legal personality of the Mango DAO to determine whether the DAO had standing, however, he does not cite to any authority requiring such allegations or explain why that would be necessary to determine standing. (Mot. at 10.) As Mango Labs alleged throughout, the DAO and certain members assigned their claims to Mango Labs. In any event, Mango Labs pled in detail facts: demonstrating the role of the DAO (Compl., ¶¶ 2, 17, 24, 25); demonstrating the harm to the DAO and its members (*id.*, ¶¶ 5-15, 33-69); and demonstrating that the DAO and certain members validly assigned claims (*id.*, ¶¶ 2, 17, 28, 70-73).

*Second*, Durairaj, the owner of Mango Labs, is a member of the Mango DAO (Comp., ¶ 17.) Whether or not Mango Labs is a member of the DAO is irrelevant for purposes of determining whether assignment was improper. Kramer fails to explain why it would be relevant and fails to

cite any authority to support his contention.  Mango Labs is the proper assignee here as it has handled many other legal issues on behalf of DAO members and the DAO, has a good track record of doing so, and it would not be workable for all the individual DAO members to individually sue as co-plaintiffs.  Thus, the assignment to Mango Labs is made for good reasons having nothing to do with jurisdiction.

*Third*, as set forth below, Mango Labs has complete diversity.  In determining diversity in the context of assignments, courts routinely look at the citizenship of the **assignee**, not the assignor. *See Bullard v. City of Cisco*, 290 U.S. 179, 190 (1933) (holding that since the assignment was "real and not simply for purposes of collection, and invested [plaintiffs] with the full title they were entitled, by reason of their citizenship and of the amount involved, to bring the suit in the federal court.  The [assignors] were not necessary parties and their citizenship was immaterial."); *Haskin*, 666 F. Supp. at 351-56 ("Though FFPR is a Puerto Rico corporation and defendants are all residents of Puerto Rico, FFPR assigned its claims to plaintiffs, all three of whom are citizens of the State of Florida and thus the opposing parties are of diverse citizenship for purposes of our diversity jurisdiction."); *Henley & Co. v. Miller Golf Equip. Corp.*, 300 F.Supp. 872, 875–76 (D.P.R. 1969) (finding that diversity may be created by assignments which are "'real and actual,' 'bona fide,' 'absolute,' 'not feigned' and in 'the regular course of business.'") (citations omitted).  Here the assignment is real, actual, bona fide, and absolute.  Mango Labs' objective is to stop Defendants' conduct and return the fraudulently acquired FTX tokens—it is not just a collection vehicle for damages.

Mango Labs is completely diverse from Defendants.  *See Dennehy v. Frambes*, 385 F. Supp. 2d 121, 124–25 (D.P.R. 2005) ("Because the Magistrate Judge found that [plaintiff] was a resident of Florida at the time of filing and he was, thus, independently diverse from the

defendants, the Court is hard-pressed to find that the assignment was collusive and with the purpose of creating diversity jurisdiction.  Diversity of citizenship already existed when [plaintiff] made the assignment.").  Durairaj, as a citizen of North Carolina (Durairaj Decl., ¶ 24), has also been significantly harmed by Defendants' conduct, is also diverse from Defendants and could have sued in his own name.  Moreover, given that Durairaj, Labs' owner, is a member of the Mango DAO, Mango Labs is not a "complete stranger to the transaction" nor a "mere collection agent[]" of the Mango DAO or the other Mango DAO members, which "is very persuasive proof" of a bona fide assignment.  *See Haskin*, 666 F. Supp. at 354.  Numerous allegations in the Complaint relate to conduct by Defendants against Durairaj.  (Compl., ¶¶ 45, 52, 59(g), 59(h), 59(j), 63, 64.)  Mango Labs has been assigned the claims of Mango DAO and its members in connection with other lawsuits, and therefore it is consistent with the parties' past conduct to assign claims to Mango Labs.  (Compl., ¶¶ 2, 17, 28, 70-74.)

All of the cases upon which Kramer relies are distinguishable.  In *Steinberg v. Toro*, 95 F.Supp. 791, 797 (D.P.R. 1951), the plaintiff "did not submit any evidence in support of his allegations of jurisdiction," did not "produce[] the writing," and there was compelling evidence to the contrary.  *Id.*  Here, Mango Labs has submitted evidence that the Mango DAO validly assigned its claims to Mango Labs.  (Compl., ¶ 70, n.9.)  Kramer's argument that the assignment was invalid ignores the fact that, as alleged in the Complaint, the majority of *valid* votes, which exclude Defendants' votes that are void as a matter of law, voted in favor of the assignment.  (Compl., ¶¶ 71-72)*; see Gorman*, 2004 WL 60271, at *10; *In re Lyman-Cutler, LLC*, 632 B.R. at 416-17.  Of the individual voters who voted on the assignment proposal, the majority of the voters voted to assign the claims to Mango Labs.  (Durairaj Decl., ¶¶ 20, 21.)  Moreover, *Benedict v. Seiberling*, 17 F.2d 841 (N.D. Ohio 1927), a case nearly a century old, actually weighs in favor of Mango

18

Labs' position.  There, the court overruled defendant's challenge to diversity jurisdiction because "no definite information of any concrete alleged fact had come to counsel now supporting the motion which tended in any way to establish a conclusion of fraudulent collusion in an attempt to establish a jurisdiction of this case []."  *Id.* at 845.  Similarly here, Kramer has not proffered any definite information or concrete fact that supports his argument—all he offers is conclusory assertions.  (Mot. at 10.)[7]  For these reasons, individual Mango DAO members' assignments of their claims were legitimate and not collusively made for the purposes of invoking this Court's diversity jurisdiction.  So too with the DAO's claims.  Mango Labs is thus not improperly trying to invoke the Court's jurisdiction.

### 4.    Mango Labs has sufficiently alleged derivative standing.

Alternatively, Mango Labs has sufficiently alleged standing to bring this action derivatively on behalf of the Mango DAO.  In a derivative suit, "the shareholder sues on behalf of the corporation for harm done to it."  *TC Investments, Corp. v. Becker*, 733 F. Supp. 2d 266, 281 (D.P.R. 2010) (citations and quotations omitted).  "Courts have applied the rationale of derivative suits" to other entities along with corporations.  *See Efron v. Embassy Suites (P.R.), Inc.*, 47 F.Supp.2d 200, 207–08 (D.P.R. 1999) (permitting derivative action brought on behalf of a limited partnership).  Mango Labs meets the requirements of Rule 23.1.  Pursuant to Rule 23.1(a), a plaintiff can bring a derivative suit if the plaintiff "fairly and adequately represent[s] the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association."  Mango Labs sufficiently alleged facts demonstrating it is a type of an organization with members that would give rise to a derivative action.  (Compl., ¶ 2, 6, 14, 15, 17, 25.)

In accordance with the pleading requirements set forth in Rule 23.1(b), the Complaint

---

[7] *Pure Oil Co. v. Puritan Oil Co.*, 127 F.2d 6 (2d Cir. 1942) is inapplicable, as the court analyzed jurisdiction under 15 U.S.C. § 97 of the Trademark Act.

demonstrates that: (1) Mango Labs' owner was a Mango DAO member at the time of the transaction (Compl., ¶¶ 63-64; Durairaj Decl., ¶ 26); (2) the action is not a "collusive one to confer jurisdiction that the court would otherwise lack" (Compl., ¶ 21); (3) ''the Mango DAO and its members, including Durairaj, the owner of Mango Labs, have been harmed based on Defendants' fraudulent conduct (Compl., ¶ 15); (4) Mango Labs represented the DAO's and other victims' interests against Eisenberg and in related governmental investigations (Compl. ¶¶ 28, 30, 71-73); and (5) it is entitled to bring the Mango DAO's claims against Defendants as a derivative claim to the extent that "Mango DAO has been captured by Defendants and their fraud." (Compl., ¶ 74.) Mango Labs provided detailed allegations concerning Defendants' fraud and breaches of fiduciary duties (Compl., ¶¶ 5-15, 33-59, 62-69, 77-82, 84-86, 88-90, 92-95), and Kramer does not contradict those allegations in any substantive way.  Thus, Mango Labs sufficiently alleged facts showing it was situated to adequately represent the interests of the Mango DAO members in protecting and enforcing the rights of the Mango DAO.

Kramer cannot have it both ways.  Either Mango Labs has standing through the valid assignment of the claims through the vote, or, if the claims were not validly assigned as Kramer contends, that purported lack of assignment supports derivative claims.  Either way, Mango Labs has sufficiently alleged facts demonstrating it has standing to sue Defendants.

**B.    Subject matter jurisdiction exists under 28 U.S.C. § 1332.[8]**

**1.    There is Complete Diversity Among the Named Plaintiff and Named Defendants.**

"Diversity  jurisdiction  requires  complete  diversity  between  all  plaintiffs  and  all

---

[8] Although Kramer moves to dismiss under Rule 12(b)(2), motions to dismiss based on lack of diversity impact the court's subject matter jurisdiction.  Thus, the proper procedural vehicle is Rule 12(b)(1), not Rule 12(b)(2).  See *Alers v. Barceló*, 152 F. Supp. 3d 59, 61, n.1 (D.P.R. 2016) (noting a motion to dismiss under Rule 12(b)(1) is the proper vehicle for challenging diversity and a court's subject-matter jurisdiction).

defendants." *Cruz-Martinez*, 475 F. Supp. 2d at 143 (citing *Casas Office Machines v. Mita Copystar America, Inc.*, 42 F.3d 668, 673 (1st Cir. 1994)).[9]  "For federal jurisdictional purposes, diversity of citizenship must be established as of the time of the filing of the suit."  *Id.*  When reviewing a complaint under Rule 12(b)(1), courts "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences."  *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (alteration in original) (citation and marks omitted).

Here, there is no dispute that all named parties in this action are diverse, which is all that is required.  As alleged in the Complaint, Mango Labs is a Wyoming Limited Liability Company whose sole member is domiciled in North Carolina, Kramer is a resident of Puerto Rico, and Schneider is a resident of the United Kingdom.  (Compl., ¶¶ 17-19.)  There are no allegations in the Complaint that any other member is in Puerto Rico.  None of the individuals who assigned their claims to Mango Labs reside in Puerto Rico.  (Durairaj Decl., ¶ 25.)

Kramer's argument that Mango Labs must allege facts demonstrating the citizenship of Defendants Does 1-10 is not supported by law.  Rather, for diversity purposes, federal courts follow the "time-of-filing rule" that determines citizenship at the date of the commencement of the action.  *See ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91-92 (1st Cir. 2008).  "Complete diversity must exist between all the ***named*** defendants and the plaintiffs in order to maintain a diversity action."  *Ortiz Mercado v. Puerto Rico Marine Mgmt., Inc.*, 736 F. Supp. 1207, 1211 (D.P.R. 1990) (emphasis added).  *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.* is instructive on this issue.  There, plaintiff sued defendant along with two fictitious defendants, John Doe and Richard

---

[9] Although Kramer relies on *Casas Office Machines v. Mita Copystar America, Inc.*, 42 F.3d 668, 673 (1st Cir.1994), it actually supports Mango Labs as there, the court found diversity existed.

Roe. *Id.* at 668.  The court held that, despite naming two "Doe" defendants, "[t]here was complete diversity between the parties . . .: [plaintiff] is a Puerto Rico corporation, and [defendant] was incorporated in California and maintains its principal place of business in New Jersey." *Id.* at 673.[10]

As noted above, the Court should look to the citizenship of the assignee (Mango Labs), not the assignor to determine diversity.  Even if the Court looked at the citizenship of the assignors, only one out of over a dozen—Mango DAO itself—even has a question.  And there too, diversity would still exist because the DAO is not a citizen of Puerto Rico, something the Complaint explicitly alleges.  The DAO was not started in Puerto Rico, does not have offices in Puerto Rico, and is not incorporated there.  Kramer's argument that the Court must determine the citizenship of individual members of the Mango DAO is unsupported by any legal authority.  The individual members of the Mango DAO are not named parties in this lawsuit.[11]  Even if the DAO itself brought this suit (which it did not), at the pleading stage, Mango Labs sufficiently carried its burden to demonstrate that the parties are diverse.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107–10 (3d Cir. 2015) (noting that a plaintiff need not affirmatively allege the citizenship of each member of an LLC if it is unable to do so after a reasonable investigation.  "If the plaintiff is able to allege in good faith that the LLC's members are not citizens of its state of citizenship, its complaint will survive a facial challenge.").  Here determining the citizenship of each of the

---

[10] In addition, the citizenship of Doe defendants is not considered for determining diversity in removal cases.  28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

[11] Kramer relies upon several cases in support of its argument that Mango Labs cannot establish complete diversity, all of which are inapposite as they analyze jurisdiction when the named plaintiffs and defendants are citizens of the same state.  *See Sweeney v. Westvaco Co.*, 926 F.2d 29, 41 (1st Cir. 1991); *Oppenheim v. Sterling*, 368 F.2d 516, 518 (10th Cir. 1966); *De La Rosa v. De La Rosa*, 118 F.4th 393, 402 (1st Cir. 2024).  Here, Mango Labs, the sole plaintiff, has sufficiently pled that it is completely diverse from all of the named Defendants.  (Compl., ¶ 17-19.)

DAO's unknown members would be a significant and novel undertaking, given the nature of DAOs and the blockchain. This Court need not be the first to delve into the citizenship of each of the members of a DAO, given that Mango Labs has sufficiently alleged a valid assignment or, alternatively, a proper derivative action, and given that it demonstrated that diversity exists between the named plaintiff and Defendants. Kramer's conclusory statement that there is one member in Puerto Rico is insufficient to transform the analysis into a factual challenge. Nor is it necessary. In sum, the Court need only look to the citizenship of Mango Labs and Defendants to determine diversity, which exists in this case.[12]

### 2.    Mango Labs pled facts supporting the amount in controversy.

Kramer appears to contend that Mango Labs failed to allege an amount in controversy that would satisfy 28 U.S.C. § 1332(a). This is wrong.[13] "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004). Mango Labs alleges that: (1) "Defendants' scheme worked: the Mango DAO purchased 72.8 million MNGO tokens under the Proposal for a total of $2,500,000" (Compl., ¶ 13); (2) the "damage from Defendants'

---

[12] Further, the proper next step, rather than dismissal, would be moving the case forward to allow discovery. *See Cruz-Martinez*, 475 F. Supp. 2d at 142–44 ("In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.") (citation omitted).

[13] In *McNutt v. General Motors Acceptance Corporation*, 298 U.S. 178, 179 (1936), the court dismissed a complaint for lack of jurisdiction when the defendant challenged the jurisdictional amount alleged and the record contained no evidence to support the allegation. Likewise, in *Thomson v. Gaskill*, 315 U.S. 442, 447 (1942), the court dismissed the complaint when the "record contain[ed] no showing of the requisite jurisdictional amount." Conversely, here, the Complaint adequately establishes that the amount in controversy is well over the jurisdictional limit and that the Mango DAO paid approximately $2.5 million to Defendants as a result of their scheme and suffered damages totaling around $10 million. (Compl., ¶¶ 51, 69, 59(k), n.4, ¶ 71, n.10.)

conduct…exceeds $10,000,000" (*id.*, ¶ 69); and (3) "the amount at issue exceeds $75,000.000…," (*id.*, ¶ 21).  Moreover, Kramer's contention that Mango Labs did not allege the Mango DAO is an entity capable of sustaining damage is belied by the facts discussed above.

Kramer wrongfully argues that "[w]here, as here, a case is brought on behalf of multiple claimants, the amount in controversy must be met for each claimant" and the claims "cannot be combined to meet the amount in controversy requirement."  (Mot. at 11.)  Rather, courts have made clear that a "plaintiff may aggregate claims, even if the claims were assigned to the plaintiff by a third party, unless the assignment was made collusively for the purpose of creating federal jurisdiction."  *See, e.g., Airlines Reporting Corp. v. S & N Travel, Inc.*, 857 F. Supp. 1043, 1049 (E.D.N.Y. 1994), aff'd, 58 F.3d 857 (2d Cir. 1995) (citing string of cases); *Nat'l Recovery Sys. v. Ornstein*, 541 F. Supp. 1131, 1133 (E.D. Pa. 1982) (same).  Mango Labs has sufficiently pled the amount in controversy requirement and Kramer's motion should be denied on these grounds.[14]

## II.    MANGO LABS ALLEGED FACTS TO SUPPORT CLAIMS FOR RELIEF, AND KRAMER'S MOTION ON 12(B)(6) GROUNDS SHOULD BE DENIED.

Kramer's argument that dismissal is warranted because Puerto Rico law does not apply fails.  Although Kramer moved to dismiss under Rule 12(b)(6), his Motion lacks any basis to justify dismissal on that ground.  *See, e.g., Medina-Rodriguez*, 255 F. Supp. 3d at 340–41.  Kramer does not even assert that Mango Labs fails to state a claim under Puerto Rico law.

In any event, now is not the time to decide which state's law applies.  *See Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 41-43 (1st Cir. 2020) (lower court's choice-of-law determination of law at motion to dismiss stage was premature); *Dmitriev v. Mann*, 597 F. Supp.

---

[14] Kramer's reliance on *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 42 (1st Cir. 2012) is misplaced.  (Mot. at 11.)  There, plaintiff did not bring claims on behalf of multiple claimants, nor did the court discuss instances in which a plaintiff brings claims on behalf of multiple claimants.  *See generally* 655 F.3d 38.  The court in *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 16 (1st Cir. 2023), on which Kramer also relies, does not contain the detailed allegations of harm that Mango Labs puts forward in the Complaint.  (*See* Compl., ¶¶ 51, 59(k), n.4, 69, 71, n.10.).

3d 484, 490 (D. Mass. 2022) (choice-of-law determination at motion to dismiss stage would be "premature"). Here, Mango Labs brought claims against Defendants for fraud and breaches of fiduciary duties with common law analogues to Puerto Rico statutes and equivalent laws in other jurisdictions, and it sued in this forum because Kramer is a resident of Puerto Rico and conducted much of his fraud from Puerto Rico. (Compl., ¶ 18.) Kramer does not contend that another state's law should apply. What Mango Labs is required to do—which it did—is plead facts that "state a claim to relief that is plausible on its face," *see Medina-Rodriguez*, 255 F. Supp. 3d at 340–41. Moreover, Mango Labs sued in this Court because Kramer is a resident of Puerto Rico, and federal courts with subject matter jurisdiction in diversity cases should apply the substantive law of the forum state. *See, e.g.*, *Theriault v. Genesis Healthcare LLC*, 890 F.3d 342, 349 (1st Cir. 2018) (noting in a diversity case, the court applies state substantive law); *New Ponce Shopping Ctr., S.E. v. Integrand Assur. Co.*, 86 F.3d 265, 267 (1st Cir. 1996) ("A federal court sitting in a diversity case must apply the choice of law rules of the forum state."). Whether Mango Labs has sufficiently pled allegations supporting the applicability of Puerto Rico law to its claims has nothing to do with whether Mango Labs sufficiently pled claims upon which relief can be granted—and Kramer does not even claim that Mango Labs failed to. His Motion on Rule 12(b)(6) grounds must be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Mango Labs respectfully requests that the Court deny Kramer's Motion to Dismiss in its entirety and grant Mango Labs such just and proper further relief.

Dated:  February 11, 2025

Respectfully submitted,

By:  */s/ Michael Burshteyn*

MICHAEL BURSHTEYN (*pro hac vice*)
**GREENBERG TRAURIG, LLP**
101 Second Street, Suite 2200
San Francisco, California 94105
Tel:  (415) 655-1300
Fax:  (415) 707-2010
Email:  Michael.Burshteyn@gtlaw.com


CARLOS JOSE ANDREU COLLAZO
**GREENBERG TRAURIG, P.A**.
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Tel:  (305) 579-0500
Fax:  (305) 951-0717
USDC-PR No. 307214
Email:  carlos.andreucollazo@gtlaw.com

## **CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on February 11, 2025, the foregoing document was electronically filed with the Clerk of the Court, using the CM/ECF system, which will provide access to all parties of record.

Dated:  February 11, 2025

*/s/ Michael Burshteyn*
Michael Burshteyn