**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| MANGO LABS, LLC, a Wyoming limited liability company, | |
| Plaintiff, | |
| v. | **Civil No. 24-01469 (GMM)** |
| JOHN KRAMER, an individual, MAXIMILIAN SCHNEIDER, an individual, and Does 1-10, et al., | |
| Defendants. | |

<u>**OPINION AND ORDER**</u>

Pending before the Court is Defendant John Kramer's ("Kramer") *Omnibus Motion to Dismiss* ("Motion to Dismiss"). (Docket No. 19). The Motion to Dismiss is **GRANTED** for lack of standing.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

This is a diversity jurisdiction action for damages filed by Plaintiff Mango Labs, LLC ("Plaintiff") against individual Defendants Kramer, Maximilian Schneider ("Schneider"), as well as any unknown defendant under the pseudonym Does 1-10, et al. (collectively, "Defendants").

Plaintiff commenced this action on October 7, 2024. (Docket No. 1). In its *Complaint*, Plaintiff alleged Defendants: breached their fiduciary duties of loyalty, good faith, and due care (<u>Id.</u> ¶¶ 76-82); violated Article 1536 of Puerto Rico's Civil Code of

Civil No. 24-1469 (GMM)
Page -2-

2020[1] (Id. ¶¶ 83-86); engaged in fraud and misrepresentation (Id. ¶¶ 87-90); and participated in unjust enrichment (Id. ¶¶ 91-95), all in violation of Puerto Rico law. Plaintiff seeks declaratory relief, compensatory damages, punitive damages, equitable relief, attorney's fees, and costs and expenses. (Id. at 34-35).

A.    Cryptocurrency transactions

Relevant to the nature of the parties' allegations is cryptocurrency and its technologies. Cryptocurrency transactions are performed using decentralized finance, or "DeFi," applications that act as platforms for the exchange of assets. Chris Brummer, Disclosure, Dapps and DeFi, 5 Stan. J. Blockchain L. & Pol'y 137, 138-40 (2022). DeFi relies on computerized systems that allow users to engage in the multilateral transactions without the interference of traditional financial institutions or Government regulatory agencies. Id. DeFi protocols can be controlled through a Decentralized Autonomous Organization ("DAO") that mimics a corporate governance structure. Id. DAOs distribute governance rights among individuals ("tokenholders") who hold virtual tokens that serve as cryptocurrency assets and represent a share of the tokenholder's governance rights over the DAO. Id. Tokenholders

---

[1] In their *Complaint*, Plaintiffs cite Article 1802 § 5141 of the Puerto Rico Civil Code. (Docket No. 1 ¶ 1). The Court notes that Article 1802 is Puerto Rico's previous tort statute and was replaced by Article 1536, when the most recent Puerto Rico Civil Code came into effect in 2020. Article 1536, however, contains the same elements as its predecessor.

Civil No. 24-1469 (GMM)
Page -3-

propose and hold votes on actions which, if approved and adopted, are executed by the DAO. Id.

B.    Plaintiff's *Complaint*

Plaintiff Mango Labs, LLC, a Wyoming limited liability company, has been the software developer of Mango Markets, a cryptocurrency exchange platform through which individuals engage in the trade of MNGO tokens, since February 2021. (Id. ¶¶ 2, 17, 23-24). Defendant Kramer, a resident of Puerto Rico, acted as a treasurer for the Mango DAO. (Id. ¶¶ 18, 31). Schneider acted as an administrator of Mango Market's communication channels, allocated funding for the platform's development, and was one of the Mango Market's top tokenholders (Id. ¶¶ 19, 32).

The controversy at hand can be traced back to November 2022, when the cryptocurrency exchange platform FTX filed for bankruptcy in the State of Delaware. (Id. ¶¶ 3, 33). Because of this bankruptcy, on October 2023 the Delaware Bankruptcy Court ordered FTX to sell the MNGO tokens that were being traded on the platform. (Id.). At this point, Defendants──whom Plaintiffs qualify as "core Mango DAO personnel" that "work in trusted positions for the Mango DAO and are charged with handling highly sensitive and confidential tasks" ──allegedly profited from FTX's sale of MNGO tokens, by misappropriating $2,500,000 for themselves, at the expense of MNGO tokenholders. (Id. ¶¶ 4-13).

Specifically, as alleged by Plaintiff in its *Complaint*, on or around April 1, 2024, Kramer and Schneider fraudulently purchased approximately 330 million MNGO tokens from the FTX platform without disclosing their identity. (Id. ¶ 34-39).[2] Subsequently, Defendants allegedly continued purchasing other unspecified quantities of MNGO tokens, thus artificially incrementing the market value of the MNGO tokens from 1.6¢ to 3.8¢. (Id. ¶¶ 40-41). On April 7, 2024, apparently, Kramer——acting under a pseudonym and alongside Schneider——presented a proposal to the Mango DAO whereby the Mango DAO would repurchase MNGO tokens at the inflated price of 3.8¢, despite also stating to the members of the Mango DAO that such tokens were bought for over 2¢ instead of the actual purchase price of 1.6¢.(Id. ¶¶ 42-47).

Kramer and Schneider, exercising the governance rights they acquired through the purchase of the MNGO tokens from the FTX sale, forced a voted on the proposal on April 11, 2024. (Id. ¶¶ 50-53). The proposal failed. (Id.). Nonetheless, Defendants presented a second proposal under which the Mango DAO would repurchase the MNGO tokens for 3.4¢ per token. This second proposal was approved by the Mango DAO on April 17, 2024. (Id.).

According to Plaintiff, Defendants challenged action of 'flipping' the market for MNGO tokens took place while the Mango

---

[2] Kramer acknowledges such a purchase, specifying the exact quantity of 333,450,822 MNGO tokens. (Docket No. 19-1 ¶ 6).

DAO was in a vulnerable position. (Id. ¶¶ 48-49). This occurred while certain members of the Mango DAO were serving as Department of Justice witness in the criminal trial of Avraham Eisenberg ("Mr. Eisenberg") ──a cryptocurrency trader convicted in the United States District Court for the Southern District of New York of market manipulation for fraudulently obtaining about $110,000,000 worth of cryptocurrency from Mango Markets. (Id.). Plaintiffs allege this deprived them from a meaningful opportunity to evaluate and effectively challenge the transaction. (Id.).

In its *Complaint*, Plaintiff asserts that Mango Labs, LLC enjoys standing to bring this suit on behalf of MNGO tokenholders for two reasons. (Id. ¶¶ 17, 70-74). First, prior to filing the current civil action, MNGO tokenholders who comprise the Mango DAO voted on whether Mango Labs, LLC should be assigned as their legal representative for this lawsuit. (Id.). Although this proposal was rejected by a 0.5% margin,[3] Plaintiff contends that the result of the vote was invalid, because Defendants allegedly tampered with the outcome by using the MNGO tokens they fraudulently acquired from FTX, to sway the vote. (Id.). But-for such an intervention by Defendants, the vote would have been approved by MNGO tokenholders; hence, Plaintiff alleges that the Court should consider that

---

[3] The proposal was rejected on a 50.5% to 49.5% vote, with a total of 901,601,133 MNGO tokens being voted. (Docket No. 19-2). A total of 446,502,389 MNGO tokens were voted in favor of the proposal, and 455,098,744 tokens were voted against the proposal. (Id.).

Civil No. 24-1469 (GMM)
Page -6-

Plaintiff was properly assigned as the tokenholders' legal representative for this action. (Id.).

Second, Plaintiff contends that it enjoys standing to sue on behalf of MNGO tokenholders in the form of a derivative action. (Id.). As pleaded, Plaintiff served as a *de facto* representative of MNGO tokenholders during Mr. Eisenberg's criminal trial and has previously received grants from the Mango DAO to enforce tokenholder's legal rights——which situates Mango Labs, LLC as an appropriate representative of the tokenholders' legal claims. (Id.).

C.    Kramer's *Motion to Dismiss*

On January 27, 2025, Kramer filed a *Motion to Dismiss*, in accordance with Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket No. 19).[4]

Pursuant to Rule 12(b)(1), Defendant asserts that the Court lacks subject matter jurisdiction because Plaintiff does not have

---

[4] Kramer cites Fed. R. Civ. P. 12(b)(2) as the basis for dismissal due to lack of diversity jurisdiction. (Docket No. 19 at 11-13). The Court notes that Rule 12(b)(2) pertains to dismissal based on the lack of personal jurisdiction, whereas the lack of diversity jurisdiction falls under subject matter jurisdiction. Valentin v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). As such, the Court examines Defendant's allegation of lack of diversity jurisdiction under the proper standard of Rule 12(b)(1).

Kramer further cites 28 U.S.C. § 1359 as a basis for dismissal. He claims that Plaintiff improperly and artificially created diversity of citizenship to invoke the Court's subject matter jurisdiction. (Docket No. 19 at 9-10). At its heart, this is an argument premised on the lack of subject matter jurisdiction—which is properly encompassed by Rule 12(b)(1). McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004); McCulloch v. Malave-Velez, 380 F. Supp. 2d 46, 49 (D.P.R. 2005). Accordingly, the Court examines Defendant's 28 U.S.C. § 1359 claim under the proper standard of Rule 12(b)(1).

standing to bring a derivative suit on behalf of MNGO tokenholders.

(Id. at 3-9). Defendant further argues that the Court lacks subject

matter jurisdiction given Plaintiff's failure to properly plead

the existence of complete diversity of citizenship as to the Doe

Defendants and the individual members of the Mango DAO; nor has

Plaintiff demonstrated that each Defendant satisfies the requisite

amount in controversy. (Id. at 11-13). In addition, Defendants

root their diversity jurisdiction argument on the premise that

Plaintiff artificially created diversity of citizenship——in

violation of 28. U.S.C. § 1359——by improperly or collusively

assigning to itself the claims of the Mango DAO to invoke the

Court's subject matter jurisdiction. (Id. at 9-10).

Regarding Rule 12(b)(6), Defendant contends that the

Complaint does not allege sufficient facts to support a plausible

claim for relief under Puerto Rico law because "Plaintiff has

alleged not one fact, nor cited one article of the Puerto Rico

Civil Code to explain why Puerto Rico should apply to this

dispute." (Id. at 14).

D.    Plaintiff's Response to the Motion to Dismiss

On February 11, 2025, *Plaintiff Mango Labs' Opposition to

Defendant John Kramer's Motion to Dismiss* was filed. (Docket No.

23). Plaintiff re-asserts it enjoys standing to bring this suit on

behalf of the individual members of the Mango DAO, given that the

Mango DAO assigned its legal claims to Mango Labs, LLC prior to the commencement of the case. (Id. at 10-19).

With respect to diversity jurisdiction, Plaintiff responds that the *Complaint* "contains plain allegations that there is complete diversity between the named plaintiff (Mango Labs), a Wyoming and North Carolina citizen, and the named defendants (Kramer (Puerto Rico) and Schneider (United Kingdom)) and that the amount in controversy well exceeds the jurisdictional minimum, in satisfaction of 28 U.S.C. § 1332". (Id. at 20-24). Moreover, Plaintiff contends that "it is not required to identify the citizenship of Defendants Does 1-10 as they are not named defendants." (Id.).

Lastly, Plaintiff argues that Kramer's arguments regarding Rule 12(b)(6) fail because enough facts have been plead on the face of the *Complaint* as to determine that a claim of relief is plausible. (Id. at 3, 24).

E.    Defendant Kramer's *Reply to Plaintiff's Response*

On February 25, 2025, *Defendant John Kramer's Reply to Plaintiff Mango Labs' Opposition to Defendant John Kramer's Motion to Dismiss* was filed. (Docket No. 28.). As to the issue of standing, Defendant reiterates that Plaintiff "fails to set forth any facts showing the Mango DAO can have claims," and rejects "that such claims were validly assigned to Mango Labs." (Id. at 15-16). As to Plaintiff's attempts to set forth a derivative action, Kramer

asserts that the suit should be brought as a class action and fails to meet those procedural requirements under Federal Rule of Civil Procedure 23. (Id.).

Kramer also posits that even if the Court finds that Plaintiff has standing, diversity jurisdiction has not, and cannot, be established (Id.).

## II.  LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by [the] Constitution and [federal] statute[,] which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted); *see* Willy v. Coastal Corp., 503 U.S. 131, 136-37 (1992); Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986); Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 95 (1951). "It is to be presumed that a cause [of action] lies outside this limited jurisdiction[,] and the burden of establishing the contrary rests upon the party asserting jurisdiction" Kokkonen, 511 U.S. at 377 (internal citations omitted). "Federal courts . . . therefore must be certain that they have explicit authority to decide a case"; otherwise, dismissal is warranted. Bonas v. Town of North Smithfield, 265 F.3d 69, 73 (1st Cir. 2011).

A motion to dismiss pursuant to Fed. R. Civ. P. 12 tests the legal sufficiency of Plaintiff's *Complaint*, rather than the merits

of the claim. *See* Twum-Baah v. Dep't of Agric., 299 F. Supp. 3d 369, 372 (D.P.R. 2018).

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n v. Sec'y of Lab., 62 F.3d 37, 39 (1st Cir. 1995); *see* Bell v. Hood, 327 U.S. 678, 682 (1945) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and[,] just as issues of fact[,] it must be decided after[,] and not before[,] the [C]ourt has assumed jurisdiction over the controversy."). "[A]s a general matter, trial courts should give Rule 12(b)(1) precedence." Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000). "It is not simply formalistic to decide the jurisdictional issue when the case would be dismissed in any event for failure to state a claim. Different consequences flow from dismissals under 12(b)(1) and 12(b)(6); for example, dismissal under the former, not being on the merits, is without res judicata effect." Ne. Erectors Ass'n., 62 F.3d at 39.

A.    Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) constitutes a challenge to the Court's subject matter jurisdiction over a claim. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). Subject-matter jurisdiction is "the [C]ourts' statutory or constitutional power to adjudicate the case." Steel

Co. v. Citizens for Better Env't, 523 U.S. 83, 89 (1998); Wachovia Bank, N. A. v. Schmidt, 546 U.S. 303, 316 (2006) ("Subject-matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases[.]").

"[A] federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999). "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception[,] for [j]urisdiction is power to declare the law, and [w]ithout jurisdiction the court cannot proceed at all in any cause[.]"Id. at 577 (citing Steel Co., 523 U.S. at 94-95) (internal citations omitted).

The First Circuit has described Fed. R. Civ. P. 12(b)(1) as a "large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction"——including standing, ripeness, mootness, the existence of a federal question, diversity of citizenship, and sovereign immunity. Valentin, 254 F.3d at 362-63. The party invoking the Court's subject matter jurisdiction bears the burden of proving that such a jurisdiction exists. McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004); Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003); Murphy v. U.S., 45 F.3d 520, 522 (1st Cir. 1995).

The "pertinent inquiry is whether the challenged pleadings set forth allegations sufficient to demonstrate that the subject

matter jurisdiction of the [C]ourt is proper." Marrero v. Costco Wholesale Corp., 52 F. Supp. 3d 437, 439 (D.P.R. 2014). In reviewing such a motion, the Court must construe the *Complaint* liberally and treat all well-pleaded facts as true, "according the plaintiff the benefit of all reasonable inferences." Murphy, 45 F.3d at 522.

In this inquiry, "the [C]ourt may consider documents outside the pleadings, such as exhibits and affidavits attached to the motion to dismiss, and the opposition." Mercado Arocho v. United States, 455 F. Supp. 2d 15, 17 (D.P.R. 2006); *see also* Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, Judicial Code § 37, 28 U. S. C. § 80, Fed. R. Civ. P. 12 (b), the court may inquire, by affidavits or otherwise, into the facts as they exist.").

Dismissal would be proper only if the facts alleged reveal a jurisdictional defect not otherwise remediable. Sumitomo Real Est. Sales (N.Y.), Inc. v. Quantum Dev. Corp., 434 F. Supp. 2d 93, 95 (D.P.R. 2006). "If the Court determines that subject matter jurisdiction does not exist[,] it must dismiss the case and not make any determination on the merits of the case." Fernandez Molinary v. Industrias la Famosa, Inc., 203 F. Supp. 2d 111, 114 (D.P.R. 2002); *see* Menendez v. United States, 67 F. Supp. 2d 42, 45 (D.P.R. 1999).

Civil No. 24-1469 (GMM)
Page -13-

B.    Fed. R. Civ. P. 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for the dismissal of a complaint when the pleading fails to state a claim upon which relief can be granted. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotations and citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id.

To survive a Rule 12(b)(6) motion, Plaintiff must allege on the face of their *Complaint* "sufficient facts to support a plausible claim for relief." Doe v. Stonehill Coll., Inc., 55 F.4th 302, 316 (1st Cir. 2022). In this context, plausible "means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels us to draw on our judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Civil No. 24-1469 (GMM)
Page -14-

The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.*"* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted); *see* Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When evaluating such a motion, the Court "accept[s] as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009); *see* Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008)); *see also* Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp., 523 F.3d 75, 85 (1st Cir. 2008). "No matter how skeptical the [C]ourt may be" it "must take the allegations as true." Iqbal, 556 U.S. at 696; Twombly, 550 U.S. at 555. Nonetheless, federal courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); *see* Land, 330 U.S. at 735 n.4 ("In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true and affidavits and other evidence produced on application for a preliminary injunction may not be considered.").

The Court does not "credit conclusory legal allegations [or] factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere

conjecture." <u>Douglas v. Hirshon</u>, 63 F.4th 49, 55 (1st Cir. 2023).

Accordingly, the Court will "ignore statements in the complaint

that simply offer legal labels and conclusions or merely rehash

cause-of-action elements." <u>Schatz</u>, 669 F.3d at 55.

### III. DISCUSSION

"The federal courts are under an independent obligation to

examine their own jurisdiction, and standing is perhaps the most

important of the jurisdictional doctrines." <u>FW/PBS, Inc. v.</u>

<u>Dallas</u>, 493 U.S. 215, 231 (1990) (*citing* <u>Allen v. Wright</u>*,* 468 U.S.

737, 750 (1984)) (internal quotations omitted). The doctrine of

standing involves a "personal stake requirement" imposed by

Article III of the Constitution of the United States. <u>Ramirez v.</u>

<u>Sanchez Ramos</u>, 438 F.3d 92, 97 (1st Cir. 2006) (internal quotations

omitted). An inquiry into standing must be based on the facts as

they existed when the action was commenced. <u>Mangual v. Rotger-</u>

<u>Sabat</u>*,* 317 F.3d 45, 56 (1st Cir. 2003). Ordinarily, dismissal for

lack of standing is without prejudice. *See* <u>Osediacz v. City of</u>

<u>Cranston</u>, 414 F.3d 136, 143 (1st Cir. 2005).

In its *Complaint*, Plaintiff asserts that Mango Labs, LLC

enjoys standing to bring this suit on behalf of MNGO tokenholders.

(Docket No. 1 ¶¶ 70-73). As acknowledged by Plaintiff, prior to

filing the current civil action, individual tokenholders who

comprise the Mango DAO voted against assigning Mango Labs, LLC as

the legal representative for their grievances against Defendants.

(<u>Id.</u>) To be sure, the purpose of this rejected proposal was for MNGO tokenholders to assign their claim to Plaintiff so that Plaintiff would prosecute the current civil action on their behalf, thereby having Mango Labs, LLC vindicate the legal rights of tokenholders. (<u>Id.</u>). This proposal——through which MNGO tokenholders aimed to grant standing to Plaintiff Mango Labs, LLC——was rejected on a 50.5% to 49.5% vote, with a total of 901,601,133 MNGO tokens being voted. (Docket No. 19-2). A total of 446,502,389 tokens were voted in favor of the proposal, and 455,098,744 tokens were voted against the proposal. (<u>Id.</u>).

Nonetheless, Plaintiffs argue that such a vote must be disregarded by this Court, given that Defendants "used their own fraudulently acquired MNGO tokens to vote against the proposal." (Docket No. 1 ¶ 72). Kramer acknowledges that he utilized his share of MNGO tokens——a quantity of 333,450,822 MNGO tokens——to vote against this proposal; that he acquired these MNGO tokens because of the FTX bankruptcy; and that, without his intervention, the proposal would have been approved. (Docket No. 19-1 ¶¶ 6-11). Kramer further asserts that his action was not prohibited by the rules adopted by the Mango DAO. (<u>Id.</u>).

Notwithstanding the results of this vote, the Court rejects Plaintiff's action of soliciting MNGO tokenholders to grant Mango Labs, LLC with the authority to bring a federal lawsuit on their behalf. Foremost, standing is not an authority that can be

conferred between private parties: It has long been settled that standing may be acquired——only and exclusively——by fulfilling Article III requisites or through a Congressional grant of standing via federal statute. Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 471, (1982) ("Standing involves both constitutional imperatives and prudential considerations."); TransUnion LLC v. Ramirez, 594 U.S. 413, 425-26 (2021) ("In determining whether a harm is sufficiently concrete to qualify as an injury in fact, the Court . . . [has] said that Congress's views may be instructive . . . In that way, Congress may "elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.") (internal citations and quotations omitted).

In accordance with constitutional standards, standing arises solely when those seeking a remedy from federal courts demonstrate the existence of a "personal, particularized injury." Hollingsworth v. Perry, 570 U.S. 693, 715 (2013). A private party cannot alter the constitutional requirements of standing "by issuing to private parties who otherwise lack standing a ticket to the federal courthouse." Id.

Unambiguously, Plaintiff may not acquire standing through a vote of MNGO tokenholders. Meaning, tokenholders cannot assign their standing to a party that otherwise would lack such standing.

Accordingly, the Court takes on the task of examining whether Plaintiff Mango Labs, LLC enjoys standing, in accordance with the requisite constitutional standard.

A.    Article III Standing

Standing derives from the requirement that "federal courts can act only upon a justiciable case or controversy" in accordance with Article III of the U.S. Constitution. Dubois v. U.S. Dep't of Agric., 102 F.3d 1273, 1281 (1st Cir. 1996). "When a party lacks Article III standing to bring a matter before the court, the court lacks subject matter jurisdiction to decide the merits of the underlying case." Id. at 1281. To satisfy the Article III standing, three factors must be present.

First, Plaintiff must have suffered an "injury in fact"——that is, "an invasion of a legally protected interest." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Such an injury must be "concrete and particularized"——the latter term meaning that the injury must be personal to the plaintiff. Id. at 560 n.1. Injuries may be shared by many others yet may not be common to everyone. United States v. Students Challenging Regul. Agency Procs., 412 U.S. 669, 687-88 (1973); Warth v. Seldin, 422 U.S. 490, 499 (1975).

Second, the injury must be "actual or imminent, not conjectural or hypothetical," Lujan, 504 U.S. at 560. It must further be "distinct and palpable." Warth, 422 U.S. at 501. The injury need not be "significant," hence a "small" stake in the

Civil No. 24-1469 (GMM)
Page -19-

outcome will suffice, if it is "direct." <u>Students Challenging Regul. Agency Procs.</u>, 412 U.S. at 689 n.14.

Third, the injury must be fairly traceable to Defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief. <u>Lujan</u>, 504 U.S. at 560-61.

In addition, Plaintiff must "set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." <u>U.S. v. AVX Corp.</u>, 962 F.2d 108, 115 (1st Cir. 1992). "Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." <u>Lujan</u>, 504 U.S. at 561. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." <u>Id.</u> (<i>quoting</i> <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 889 (1990) (internal quotations omitted).

As to Mango Labs, LLC, at no moment has Plaintiff plead that, due to Defendants' challenged actions, it has suffered a concrete and particularized injury. To the contrary, Plaintiff has consistently noted that its claim of standing is based solely on the harm suffered by MNGO tokenholders. (Docket No. 17, 70-74). Given Plaintiff's failure to set forth reasonably definite factual allegations indicating that if suffered a concrete and

particularized injury, the Court finds that Plaintiff lacks
Article III standing.

B.    Associational Standing

Even if the Court assumes Plaintiff intends to represent
tokenholders via associational standing, that effort also fails.
"[I]n the absence of injury to itself, an association may have
standing solely as the representative of its members." Warth, 422
U.S. at 511. The association may be an appropriate representative
of its members and, therefore entitled to invoke the court's
jurisdiction, under a three-part test: "[An] association has
standing to bring suit on behalf of its members when: (a) its
members would otherwise have standing to sue in their own right;
(b) the interests it seeks to protect are germane to the
organization's purpose; and (c) neither the claim asserted nor the
relief requested requires the participation of individual members
in the lawsuit." Hunt v. Wash. State Apple Advert. Comm'n, 432
U.S. 333, 343 (1977). See Int'l Union v. Brock, 477 U.S. 274, 281-
82 (1986).

Plaintiff Mango Labs, LLC is a software developer, not a
membership organization. Despite pleading that Plaintiff has
received monetary grants from the Mango DAO and has been entrusted
by MNGO tokenholders to serve a representative of their legal
claims, tokenholders are not members of the Plaintiff's LLC
enterprise. Considering that associational standing is reserved

for associations who partake in legal efforts on behalf of their members, and because the MNGO tokenholders are not members of Mango Labs, LLC, such a doctrine is not applicable to Plaintiff. <u>FDA v. All. for Hippocratic Med.</u>, 602 U.S. 367, 399 (2024) ("Our doctrine permits an association to have standing based purely upon a member's injury, not its own.")

Likewise, Plaintiff fails to affirmatively plead that it shares an organizational mission that is germane to the MNGO tokenholder's interest at stake. Namely, Mango Labs, LLC was not "organized for the purpose of representing the interests of" tokenholders. <u>Pennell v. San Jose</u>, 485 U.S. 1, 7 n.3 (1988). As a software developer, Plaintiff has not demonstrated——on the face of the *Complaint*, nor on its subsequent filings——that it has an organizational purpose that that is appropriate and fitting to the interests of MNGO tokenholders, who are not members of the LLC.

Given that Plaintiff have failed to establish an essential element of the three-part test for associational standing, the Court finds that Plaintiff lacks associational standing——without the need to evaluate the remaining two elements.

C.   <u>Derivative Standing</u>

Plaintiff. and Kramer, alike, have referred to the case at hand as a "derivative action." (Docket No. 1 ¶ at 26, 34-35) (Docket No. 19 at 9-8, 12). Assuming arguendo that Plaintiff

Civil No. 24-1469 (GMM)
Page -22-

intended to file a derivative suit, it still fails to meet standing requirements under this test.

A derivative action is a lawsuit brought on behalf of a corporation or unincorporated association by a shareholder, rather than being brought by the management of the corporation or of the unincorporated association. Fed. R. Civ. P. 23.1; *see* <u>Daily Income Fund v. Fox</u>, 464 U.S. 523, 526 (1984).

Claims of corporate mismanagement are classically derivative actions because, if proven, they represent a direct wrong to the corporation that is indirectly experienced by all shareholders. <u>Kramer v. W. Pac. Indus., Inc.</u>, 546 A.2d 348, 353 (Del. 1998).

Fed. R. Civ. P. 23.1 governs derivative actions, and it "applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). Thus, the Court must now determine whether Plaintiff has properly pleaded a derivative action under Fed. R. Civ. P. 23.1.

At the outset, as part of the pleading requirements, Rule 23.1 clearly states at the outset that "[t]he Complaint must be verified". <u>Id.</u> Plaintiff has clearly not complied with the strictures of Rule 23.1, given that it never verified the *Complaint*. Moreover, Plaintiff has failed to comply with other important requirements, discussed below.

Rule 23.1 permits Plaintiff to prosecute a derivative action if two requirements are met: First, Plaintiff must have owned shares in the corporation or unincorporated association at the time of the disputed transaction. Id.; *see* Potter v. Hughes, 546 F.3d 1051, 1056 (9th Cir. 2008); *see also* Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan v. UBS Fin. Services Inc. of Puerto Rico, No. CV 10-1141 (ADC), 2013 WL 12237669, at *5 (D.P.R. July 9, 2013). Under this ownership requirement, to have derivative standing to sue, Plaintiff must show they "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). To make this showing, Plaintiff must "be a shareholder at the time of the alleged wrongful acts" and "retain ownership of the stock for the duration of the lawsuit" to have standing to bring a shareholder lawsuit. Quinn v. Anvil Corp., 620 F.3d 1005, 1012 (9th Cir. 2010); *see* Lewis v. Chiles, 719 F.2d 1044, 1047 (9th Cir. 1983). A plaintiff "who ceases to be a stockholder, whether by reason of merger or for any other reason, loses standing to continue a derivative suit." Lewis v. Anderson, 477 A.2d 1040, 1049 (Del. 1984).

Second, in a federal shareholder derivative action, a shareholder must plead with particularity either that demand was made on the corporation or that demand was futile. Under the demand requirement, "[a] shareholder seeking to vindicate the interests

Civil No. 24-1469 (GMM)
Page -24-

of a corporation through a derivative suit must first demand action

from the corporation's directors or plead with particularity the

reasons why such demand would have been futile." Rosenbloom v.

Pyott, 765 F.3d 1137, 1148 (9th Cir. 2014). Plaintiff may be

excused from the demand requirement "if the facts show that demand

would have been futile." Id. (*citing* Smith v. Sperling, 354 U.S.

91, 96-97 (1957). The First Circuit vigorously enforces this

requirement and will dismiss derivative actions when plaintiffs do

not comply. *See* Gonzalez Turul v. Rogatol Distributors, Inc., 951

F.2d 1, 2 (1st Cir. 1991); Grossman v. Johnson, 674 F.2d 115, 125

(1st Cir.), *cert. denied*, 459 U.S. 838 (1982); Heit v. Baird, 567

F.2d 1157, 1160 (1st Cir.1977); *see also* Efron v. Embassy Suites

(Puerto Rico), Inc., 47 F. Supp. 2d 200, 209 (D.P.R. 1999), *aff'd*,

223 F.3d 12 (1st Cir. 2000). To this extent, the First Circuit has

held the pleading of a demand or its futility to be a strict

requirement warranting dismissal when plaintiffs do not comply.

Gonzalez Turul v. Rogatol Dist., Inc., 951 F.2d at 2.

However, Federal Rule 23.1 only establishes pleading

requirements and does not define substantive rights or

obligations. Kamen v. Kemper Financial Servs., 500 U.S. 90, 96,

(1991); Gonzalez Turul, 951 F.2d at 2; *see also* Rosenbloom v.

Pyott, 765 F.3d at 1148 ("Although Rule 23.1 supplies the pleading

standard for assessing allegations of demand futility, the

substantive law which determines whether demand is, in fact, futile

Civil No. 24-1469 (GMM)
Page -25-

is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief."). To understand the contours of the demand requirement, courts must look to the law of the state of incorporation, which in this case is Wyoming.[5] Here, it is unnecessary go further in the analysis, as Plaintiff has clearly failed to comply with the pleading requirements.

As applied here, this action cannot be properly considered a derivative action, for two reasons. Firstly, Plaintiff has failed to plead that Mango Labs, LLC is a tokenholder of MNGO tokens. Secondly, Plaintiff has failed to plead whether a demand was made to the administrators of the Mango DAO to bring an action against Defendants. Nor has it plead with particularity why such a demand would have been futile. Noting that Plaintiff have failed the test set forth by Federal Rule of Civil Procedure 23.1, the Court finds that Plaintiff does not enjoy derivative standing.

---

[5] Pursuant to section 17-29-902 of Wyoming Limited Liability Company Act, entitled "Derivative Action":

  (a) A member may maintain a derivative action to enforce a right of a limited liability company if:
        (i) The member first makes a demand on the other members in a member-managed limited liability company, or the managers of a manager-managed limited liability company, requesting that they cause the company to bring an action to enforce the right, and the managers or other members do not bring the action within a reasonable time; or
        (ii) A demand under paragraph (i) of this subsection would be futile.

WY. Stat. § 17-29-902.

**Civil No. 24-1469 (GMM)**
**Page -26-**

### IV.  CONCLUSION

The Court finds that Plaintiff Mango Labs, LLC lacks standing to prosecute the civil action at hand. Out of judicial restraint, the Court **GRANTS** Defendant Kramer's Motion to Dismiss (Docket No. 19) under Rule 12(b)(1), and the case is dismissed without prejudice for lack of standing. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, September 29, 2025.


<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE